**FILED**

**MARCH 10, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| K-5 REALTY, LLC, a Florida limited liability company, | ) ) ) | **08 C 1400** |
| Plaintiff, | ) ) | Case No.: |
| v. | ) ) | Judge: |
| CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an Illinois corporation, and CHARLES CHRISTIAN, individually, | ) ) ) ) ) | |
| Defendants. | ) ) | **JUDGE NORGLE MAGISTRATE JUDGE BROWN** |

**COMPLAINT**

The Plaintiff, K-5 REALTY, LLC, a Florida limited liability company ("K-5"), by its attorneys, Gregg Minkow and Laurie Randolph of Hinshaw & Culbertson LLP, complains as follows of the Defendants, CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an Illinois corporation ("Contributed"), and CHARLES CHRISTIAN, individually ("Christian"):

**PARTIES, JURISDICTION & VENUE**

1.      K-5 is a limited liability company organized under the laws of the State of Florida, engaged in the business of developing and building real estate.

2.      Contributed is a corporation organized under the laws of the State of Illinois, whose registered agent, Illinois Corporation Service, is listed with the Secretary of State of Illinois as having its office in Springfield, Illinois.

3.      Christian is, and at all relevant times was, the President of Contributed, residing in Scottsdale, Arizona.

4.      This action arises out of a breach of contract by Contributed to make a construction loan to K-5, and embezzlement of a sizeable up-front loan fee ($600,000) by

Christian after his company, Contributed, failed to close on the loan, and then failed to refund the fee as demanded by K-5.

5.      Contributed is a citizen of the State of Illinois.

6.      Christian is a citizen of the State of Arizona.

7.      K-5 is a citizen of the State of Florida.

8.      Subject matter jurisdiction in this Court is proper on the basis of diversity of the parties pursuant to 28 U.S.C. §1332(a)(1).

9.      The written agreements sued upon provide that any dispute or claim regarding the rights of any party, or the interpretation of the agreements, shall be decided under Illinois law and brought in the "appropriate court in and for Cook County, Illinois."

10.     The aforesaid agreement was drafted and signed by Christian, as President of Contributed.

11.     This Court has personal jurisdiction over Contributed pursuant to the "Illinois Long-Arm Statute," at 735 ILCS 5/2-209(b)(3), and considerations of due process under the Fourteenth Amendment to the United States Constitution, by reason of Contributed being a corporation organized under the laws of the State of Illinois.

12.     This Court has personal jurisdiction over Christian pursuant to the "Illinois Long-Arm Statute," at 735 ILCS 5/2-209(a)(12), and considerations of due process under the Fourteenth Amendment to the United States Constitution, by reason of Christian's performance of duties as a director or officer of a Contributed, a corporation organized under the laws of the State of Illinois.

13.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(a)(3).

6290362v5 886125

14.     This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) with respect to Counts II thru IV seeking civil remedies under Illinois state common law for conversion and breach of fiduciary duty, and for theft or exploitation pursuant to Florida Statutes Annotated §772.11.

## COUNT I – BREACH OF CONTRACT (CONTRIBUTED)

15.     K-5 incorporates herein by this reference Paragraphs 1 through 14, above, as though set forth here verbatim

16.     In June, 2007, K-5 (through its Managing Member, Kevin Ward) and Contributed (through Christian as its President) signed and entered into a series of three (3) written agreements, namely:

      a.     Commitment Letter (attached hereto as Exhibit A)

      b.     Commitment Fee and Costs letter (attached hereto as Exhibit B); and

      c.     Summary of Terms and Conditions (attached hereto as Exhibit C).[1]

17.     Exhibits A, B, and C are referred to collectively hereinafter as the "Loan Agreement."

18.     Pursuant to the Loan Agreement, Contributed agreed to loan K-5 the sum of $10 million, in two phases ($6 million and $4 million), for the construction of an 18-unit condominium building in Florida to be known as Kymberly's Court.

19.     While specific terms of the loan arrangement appear in the Loan Agreement itself, those terms included, among others, the following:

---

[1] A certain "Letter of Funding Request" is referenced on p. 2 of Exhibit A as a "supplement" thereto. That Letter is not attached to this Complaint at present, because p. 3 of Exhibit A states that the Letter of Funding Request was to remain confidential even after the signing of Exhibit A. Similarly, as Exhibits B and C are marked "confidential," only so much of their content as is essential for the text of the Complaint has been included. K-5 will move for a ruling on whether the Letter of Funding Request and Exhibits B and C should be filed under seal, before attaching them to the Complaint.

6290362v5 886125

a.   Closing on the first phase of the loan, including disbursement of a portion of the $6 million in principal (and availability of the rest as needed by K-5 thereafter), was to occur on August 31, 2007.

b.   K-5 was to pay, in advance of the closing, a Commitment Fee, Costs And Closing Fee in the sum of $600,000.00 (referred to repeatedly in the Loan Agreement as "CFC&CF"); and

c.   The CFC&CF was to be refunded if the loan did not close, regardless of the reason, provided the $600,000.00 amount of the CFC&CF was originally paid by K-5 in a lump sum.

20.   K-5 paid the $600,000.00 sum of the CFC&CF in a lump sum by cashier's check dated June 21, 2007, made payable to Contributed, which Contributed duly cashed and deposited in its bank account on or about June 25, 2007.

21.   K-5 performed all conditions required on its part under the Loan Agreement.

22.   Numerous times, without fault on the part of K-5, Christian, on behalf of Contributed, postponed the closing date of the first phase of the loan.

23.   Finally, Contributed set a final closing date of December 5, 2007 for the first phase of the loan, with the actual disbursement of funds to take place on said December 5, 2007.

24.   K-5, through Kevin Ward, appeared at a "dry closing" on December 3, 2007, at the offices of Properties Title in Sarasota, Florida, to deliver any remaining documents needed or requested for the December 5th closing and disbursement.

25.   On December 3, 2007, and at all times before that date and thereafter, K-5 and Ward were ready, willing and able to perform under the Loan Agreement.

26.   Ward, on behalf of K-5, executed all documents required by Contributed in connection with the intended closing, and performed all other tasks requested by Contributed in order for the closing and loan disbursements to proceed.

27.   By contrast, and in spite of K-5's performance, Contributed did not countersign any of the closing agreements, did not disburse or make available any funds on December 5th or

4

at any other time, and, in fact, did not perform any of the duties required on its part in order to close the loan.

28.     Contributed breached the Loan Agreement by failing to close, and to disburse and make available the loan proceeds, as required by that agreement.

29.     On December 10, 2007, following the failed closing, Ward sent correspondence to Christian, as the representative of Contributed, revoking the documents signed at the "dry closing" on December 3, 2007, terminating the loan transaction due to breach by Contributed, and demanding the return of the $600,000.00 CFC&CF within forty-five (45) days (i.e., by January 30, 2008). A copy of that correspondence is attached hereto as Exhibit D.

30.     On January 23, 2008, attorney Robert Moore, on behalf of K-5, sent to Christian a second demand for refund as a "reminder." A copy of that further demand is attached hereto as Exhibit E.

31.     Having already breached the Loan Agreement by failing to close and disburse in a timely fashion, Contributed further breached the Loan Agreement by failing to refund the $600,000.00 CFC&CF when the loan did not close as it was supposed to.

32.     As a direct and proximate result of the aforesaid breach of contract by Contributed, K-5 has been damaged in the sum of at least $600,000.00 representing the CFC&CF which has not been returned to it; lost profits due to delays in the funding and start-up of the condominium construction; interest on other loans, which the Loan Agreement was intended to pay off, as a result delay and failure by Contributed to close the loan as scheduled; attorneys' fee incurred in having to pursue compliance with the Loan Agreement; and other damages.

5

WHEREFORE, K-5 prays for judgment against Contributed for damages in a sum in excess of $600,000.00, plus reasonable attorneys' fees and costs incurred in this action, plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT II – CONVERSION (CONTRIBUTED AND CHRISTIAN)

33.     K-5 incorporates herein by this reference Paragraphs 1 through 32 of Count I, above, as though set forth here verbatim.

34.     The $600,000.00 CFC&CF payment by K-5 comprises identifiable property designated to be refundable in the event that, for any reason, the Loan Agreement did not close.

35.     At all times following K-5's demand for refund, K-5 had an absolute and unconditional right to immediate possession of the CFC&CF funds.

36.     Contributed and Christian, jointly and severally, wrongfully and without authorization assumed control, dominion, or ownership over the CFC&CF funds, and have refused to turn them over in response to the demands made by K-5.

37.     In point of fact, it appears that Christian has converted the funds to his own use. When asked why the funds were not being immediately returned, Christian told Ward that Christian had used the $600,000.00 in CFC&CF funds to buy key man life insurance for $10 million on Ward, a $5-7 million performance bond on a contractor, and a $10 million bond to facilitate assignment of K-5's "obligations." Christian said he needed time to recover the money from these applications in order to refund them to K-5. However, prior to the closing of the loan, neither Christian nor Contributed would have an insurable interest in Ward's life, or any legal right to the issuance of a performance bond. Moreover, on information and belief, Christian and Contributed satisfied on January 16, 2008 a judgment obtained against them in the State of Texas in 2004. In light of the implausibility of Christian's explanation for how he had deployed the

6

CFC&CF under his control, and the coincidence in time of the Defendants' satisfaction of the judgment against them from 2004, it appears that Christian and Contributed have used the CFC&CF funds other than for their intended purpose, in violation of their fiduciary duty, and are now covering up.

38.     As a direct and proximate result of the Defendants' foregoing conduct, K-5 has suffered damages in an amount equal to the $600,000.00 tortiously and wrongfully withheld from it by the Defendants.

39.     The Defendants acted intentionally, with malice, and with a reckless disregard for the harm that they were causing to K-5 by misusing the CFC&CF funds as they apparently have done.

WHEREFORE, K-5 prays for judgment against the Defendants, jointly and severally, for compensatory damages in a sum of at least $600,000.00, plus punitive damages in a sum to be determined at trial, plus costs of suit, and such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT III – BREACH OF FIDUCIARY DUTY (CHRISTIAN AND CONTRIBUTED)

40.     K-5 incorporates herein by this reference Paragraphs 1 through 39 of Count II, above, as though set forth here verbatim.

41.     It is the custom and practice in the industry for a lender to hold funds like the CFC&CF in escrow for the benefit of both the lender and borrower, until it is determined whether the loan has closed in accordance with the loan contract.

42.     The Loan Agreement in this case created an express trust under which, prior to closing of the loan and distribution of loan proceeds, Christian and Contributed held the $600,000.00 CFC&CF in trust for the benefit of K-5.

6290362v5 886125

43.    At all times, as a result of that trust, Christian and Contributed had a fiduciary duty to preserve the availability of the $600,000.00 CFC&CF for refund to K-5 in the event the loan did not close.

44.    Christian and Contributed breached their fiduciary duty to K-5 by disposing of the $600,000.00 CFC&CF in a manner which did not benefit K-5 and by refusing, or not having it available for, a refund to K-5.

45.    As a direct and proximate result of the Defendants' foregoing conduct, K-5 has suffered damages in an amount equal to the $600,000.00 which was either dissipated or and wrongfully withheld from it by the Defendants.

46.    The Defendants acted intentionally, with malice, and with a reckless disregard for the harm that they were causing to K-5 by misusing the CFC&CF funds as they apparently have done.

WHEREFORE, K-5 prays for judgment against the Defendants, jointly and severally, for compensatory damages in a sum of at least $600,000.00, plus punitive damages in a sum to be determined at trial, plus costs of suit, and such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT IV – CIVIL THEFT (CHRISTIAN AND CONTRIBUTED)

47.    K-5 incorporates herein by this reference Paragraphs 1 through 46 of Count III, above, as though set forth here verbatim.

48.    Pursuant to Florida Statutes Annotated §772.11, any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of a violation of Florida Statutes Annotated §812.014 (among other provisions) has a cause of action for three-fold the actual damages sustained, along with reasonable attorneys' fees and court costs.

6290362v5 886125

49.     §812.014, in turn, states that a person commits theft if he knowingly uses the property of another with intent to either temporarily or permanently deprive the other person of a right to the property or a benefit from the property, or appropriate the property to his or her own use or to the use of any persons not entitled to the use of the property.

50.     At all relevant times, Christian and Contributed knew that when they failed to close and disburse under the Loan Agreement in a timely fashion, K-5 was entitled to a return of the CFC&CF funds in the sum of $600,000.00.

51.     Despite the aforesaid knowledge, Christian knowingly obtained the CFC&CF funds from Contributed, or Christian or Contributed used those funds, with the intent to temporarily or permanently deprive K-5 of its right to those funds or to the benefit from those funds.

52.     Based, among other things, upon what appears to be the misinformation conveyed by Christian about how the money was used, such deprivation appears to have been with intent to temporarily or permanently appropriate the property to Christian's own use, or to the use of Contributed, where it was clear to Christian and Contributed that they were not entitled to use of the funds.

53.     §772.11 requires pre-suit demand for the treble damages amount, and allows the recipient of that demand to a release by making the treble damages payment within thirty (30) days after receiving the demand. K-5 has sent the demand notice concurrently with the filing of this action (Exhibit F hereto), and stands ready, willing, and able to voluntarily dismiss this count of the Complaint in the event (however unlikely) that the Defendants voluntarily pay three times the $600,000.00 sum that they have wrongfully withheld.

6290362v5 886125

WHEREFORE, subject to the Defendants' right to pay the full treble damages within thirty (30) days after receipt of the Exhibit F, K-5 prays for judgment against the Defendants, jointly and severally, in the sum of $1,800,000.00, plus costs of suit, reasonable attorneys' fees, and such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

PLAINTIFF DEMANDS TRIAL BY 12-PERSON JURY ON ALL MATTERS PERMTTED BY LAW.

K-5 REALTY, LLC, Plaintiff


By:   s/Gregg I. Minkow
          One of its Attorneys

Gregg I. Minkow
Laurie S. Randolph
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
E-Mail: gminkow@hinshawlaw.com
E-Mail: lrandolph@hinshawlaw.com

6290362v5 886125

# Exhibit A



June 22, 2007

**CONFIDENTIAL**

**COMMITMENT**

**LOAN NO.: TCPL-57331**

Kevin W. Ward
165 Sugar Hill Dr.
Osprey, Fl. 34229

Borrower:
K-5 Realty, LLC,
1435 E. Venice Ave. Suite 226,
Venice, Fl. 34292

Dear Mr. Ward,

RE:    A Takeout Construction Phase Loan in the amount of ($10,000,000) Dollars.

**Financing.**    "K-5 Realty, LLC." "Kevin Ward" ("you" or "Company") has advised Contributed Mutual Benefits Mortgage Services, Inc. ("we" or "us" or "CMBMS") that the Company would like to have ($6,000,000) available which is the first phase of the ($10,000,000) Takeout Construction Phase Loan ("TCPL") to payoff a ($1,500,000) Dollar existing first lien  and design and construct a three story, eighteen unit (18 unit) condominium building, with the balance.  The Financing consists of a ($10,000,000) Takeout Construction Phase Loan (secured by, among other things, the pledge by "K-5 Realty, LLC." "Kevin Ward" of "the Property" all improvements, sales, sale proceeds, all leases, management agreements, all other agreements, all plans and specifications, and other assets and  guarantees of the project  and Borrower as more specifically set forth in the Summary of Terms and Conditions  ("Term Sheet").  Part of the Loan proceeds shall be used to cover the costs of a reserve fund sufficient to debt service the Takeout Construction Phase Loan for 30-months. One week prior to the Closing Date we shall give an indication of the applicable interest rate of the Takeout Construction Phase Loan as described in the Term Sheet.

**Commitment.**    Subject to the terms and conditions as stated in the Term Sheet, we are pleased to commit ($10,000,000) as a Takeout Construction Phase Loan ($6,000,000) of which is the first phase. Upon the execution and delivery of the loan documents ("Closing") proceeds in the full amount necessary to pay for any agreed upon disbursements shall be made available through the escrow set up to handle the closing. In the event this (TCPL) is paid off ahead of time any funds remaining with the Lender as part of the 30-month construction loan interest reserve will be released to the Borrower. A legal description of the property will be provided by the Borrower and shall be stated in our Loan Agreement.

**Conditions to Commitment.**    Our commitment is conditioned on (a) no material adverse change occurring in the business, assets, financial condition, performance or prospects of the Company,  (b) our being satisfied with the results of our continuing due diligence review of the Company, the collateral and discovering no information in the course of our due diligence or otherwise that we believe has a materially negative impact on any of the items in this subparagraph (b) or subparagraph (a) above, (c) the information provided by the Company as described above being correct and complete in all material respects, (d) the conditions to be set forth in the loan documents being satisfied, (e) no litigation or other action being pending or threatened seeking an injunction, damages or other relief relating to the financing that will survive the closing, (f)) no material adverse change occurring in governmental regulation or policy that adversely affects you or us. Our commitment is also conditioned on the negotiation, execution and delivery of loan documents acceptable to you, respective counsel, and us no later than July 31, 2007. The Term Sheet did not include all of the conditions, covenants, representations, warranties, defaults, definitions and other terms to be contained in the loan documents, some of which must still be developed and agreed upon. We reserve the right to propose additional terms.

**Closing.**    The closing date shall be August 31, 2007.  You must provide all documentation including but not limited to presales, project plans and specifications, management agreements, lease agreements, appraisals, and financial projections to us 30-days prior to the date of closing.

**Indemnification and Expenses.**    You agree to indemnify and hold harmless us and our directors, officers, employees, agents, attorneys and affiliates (each, an "indemnified person") from and against all losses, claims, damages, liabilities and expenses which may be incurred by or asserted against an indemnified person in connection with or arising out of this letter, the Financing, the use of the proceeds thereof, or any related transaction, regardless of whether the indemnified person is a party thereto, and to reimburse each indemnified person on demand for all reasonable legal and other expenses incurred in connection with investigating or defending any of the foregoing, provided that this indemnity will not, as to any indemnified person, apply to losses, claims, damages, liabilities or expenses arising from the willful misconduct or gross negligence of such indemnified person or any breach by such indemnified person of its obligations under this letter. No party hereto will be liable to any other party hereto for indirect or consequential damages relating to any such matters. You also agree to pay all of our reasonable expenses (including fees and expenses of our outside counsel) incurred in connection with preparing, negotiating and enforcing this letter and the loan documents, conducting the due diligence reviews, and related matters.

**General.**    Your obligations under Indemnification and Expenses above will survive the Closing or the expiration or termination of our commitments in this letter.

This letter is supplemented by a separate, modified, previously submitted by you, Letter of Funding Request dated June 10, 2007. Said letter is subject to all of our Normal terms and conditions for loans similar in nature. This letter, the Letter of Funding Request as described before hand and the Term Sheet constitute the entire understanding of the parties hereto with respect to the subject matter hereof and supersede all prior and current understandings and agreements, whether written or oral. Any changes to this letter, the Letter of Funding Request or the Term Sheet must be agreed in writing by the parties hereto. This letter, the Letter of Funding Request and the Term Sheet may be executed in any number of counterparts (and delivery of an executed counterpart by telecopy will be effective as delivery of a manually executed counterpart), which together will constitute one agreement, and will be governed by and construed in accordance with the laws of the State of Illinois. The parties hereto hereby waive any right to trial by jury with respect to any claim, action, suit or proceeding arising out of or contemplated by this letter.

You agree not to disclose this letter, the Letter of Funding Request or the Term Sheet or any of their terms, directly or indirectly, to any person other than your employees, agents and advisors who are directly involved in the financing or related transactions and agree not to disclose the same, or as may be required by law (in which case you agree to inform us promptly thereof); provided that after you sign and return this letter, the foregoing restrictions will cease to apply to this letter but continue to apply to the Letter of Funding Request. This letter is for your benefit only and may not be relied upon by, and does not create any rights in favor of, any other person or entity, including those who are authorized to receive copies hereof.

Please sign and return to us a copy of this letter by June 27, 2007.

We look forward to working with you on this transaction.

Very truly yours,

Contributed Mutual Benefits
Mortgage Services, Inc.

By: _____

Name:_____Charles Christian_____

Title:_____President_____

Accepted and agreed to:
K-5 Realty, LLC

By: _____
        Kevin W. Ward

Title: _MANAGING MEMBER_

Dated: _6/25/07_

# Exhibit B

(Pending Motion to Determine Whether to be Filed Under Seal)

# Exhibit C

(Pending Motion to Determine Whether to be Filed Under Seal)

# Exhibit D

December 10, 2007

SENT CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Charles Christian, President
Contributed Mutual Benefits Mortgage Services, Inc.
8655 East Via Del Ventura, Ste. G-200
Scottsdale, AZ  85258

      RE:    $10,000,000 Loan from Contributed Mutual Benefits Mortgage Services, Inc.
              (Lender) to K-5 Realty, LLC (Borrower)
              Loan No. TCPL-57331
              Our File No.  14467.35

Dear Mr. Christian:

      As I stated in my email to you of December 9, 2007, you set eight closing dates; K-5 Realty, LLC, has met all the conditions for closing; all of the documents your attorneys prepared have been executed by K-5 Realty, LLC; closing has not occurred.

      Pursuant to the terms of the committment letter, K-5 Realty, LLC, is demanding the return of its $600,000 deposit (CFC & CF) for failure of the Lender to perform.

                        Very truly yours,

                        Kevin W. Ward

cc: Robert L. Moore, Esquire

# Exhibit E



227 Nokomis Avenue S.
Venice, Florida 34285

Tel: (941) 485-1571
Fax: (941) 484-7226

Mailing Address:
Post Office Box 1767
Venice, FL 34284-1767

**Kanetsky Moore & DeBoer**, P.A.
*Law Offices*

Murray Kanetsky
Robert L. Moore*
Robert J. DeBoer*
Erik R. Lieberman**
Sharon S. Vander Wulp
*Board Certified Real Estate*
**Also admitted in Pennsylvania*

January 23, 2008


SENT VIA FACSIMILE:  480-563-3374
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AND REGULAR MAIL

Charles Christian, President
Contributed Mutual Benefits Mortgage Services, Inc.
8655 East Via Del Ventura, Ste. G-200
Scottsdale, AZ  85258

RE:     Return of $600,000 Due to K-5 Realty, LLC
        Loan No.  TCPL-57331
        Our File No.  14467.35

Dear Mr. Christian:

As you know, we represent K-5 Realty, LLC, and in connection with that representation, have been asked to contact you to ensure that the $600,000 deposit now due to our client will be returned within the 45-day period, i.e., by January 30, 2008.  Our client has needs for these funds because of additional business matters.  Any failure to properly return this money on time could result in additional damages to our client.  Our client would then look to you for those additional damages.

Again, we expect the money to be sent to our client timely.  Failure to do so will result in my client having to pursue all legal remedies available to it.

Very truly yours,

Robert L. Moore

RLM/lmg
cc:  K-5 Realty, LLC

# Exhibit F



# HINSHAW

& CULBERTSON LLP

**ATTORNEYS AT LAW**

222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081

312-704-3000
312-704-3001 (fax)
www.hinshawlaw.com

March 10, 2008

**VIA FACSIMILE, REGULAR MAIL,**
**UPS OVERNIGHT & CERTIFIED MAIL-RETURN RECEIPT**

Mr. Charles Christian,                             Mr. Charles Christian, individually
as President on behalf of                          8655 E. Via Del Ventura, Suite G-200
Contributed Mutual Benefits Mortgage               Scottsdale, AZ 85258
Services, Inc.
8655 E. Via Del Ventura, Suite G-200
Scottsdale, AZ 85258

> **Re:    Demand for Treble Damages in Connection with Theft of Commitment Fee, Costs, and Closing Fee paid by K-5 Realty, LLC**

Dear Mr. Christian:

We are writing on behalf of our client, K-5 Realty, LLC ("K-5").

Pursuant to Florida Statutes Annotated §772.11 and §812.014, K-5 demands that you and/or Contributed Mutual Benefits Mortgage Services, Inc. ("Contributed") pay to K-5, within thirty (30) days after your receipt of this letter, the total sum of $1,800,000.00. This sum represents treble damages for the theft by you and Contributed of a $600,000.00 CFC&CF payment which you were required to refund under the terms of a certain Commitment Letter, and the associated Fee and Costs Letter and Summary of Terms and Conditions signed in June 2007 pertaining to the proposed Kymberly's Court development in Florida,.

The $600,000.00 CFC&CF was previously referenced in the letter of December 10, 2007 from Kevin Ward of K-5, and the letter of January 23, 2008 from Robert Moore, the Florida attorney representing K-5, revoking the agreements, mortgages, and other documents previously signed in connection with the proposed closing of the loan arrangement referred to in the Commitment Letter, Fee and Costs Letter, and Summary of Terms and Conditions, and demanding the return of the CFC&CF payment in accordance therewith.

6291238v1 886125

Arizona   California   Florida   Illinois   Indiana   Massachusetts   Minnesota   Missouri   New York   Oregon   Rhode Island   Wisconsin

Mr. Charles Christian
March 10, 2008
Page 2

Please call me with any questions. If you are represented by an attorney in this matter, please have that attorney call me instead.

Very truly yours,

HINSHAW & CULBERTSON LLP

Gregg I. Minkow
312-704-3955
gminkow@hinshawlaw.com

GIM/nmb

cc:    Kevin Ward
       Robert Moore