IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| K-5 REALTY, LLC, a Florida limited liability company, ) ) ) | |
| Plaintiff, ) ) v. ) ) ) CONTRIBUTED MUTUAL BENEFITS ) MORTGAGE SERVICES, INC., an Illinois ) corporation, and CHARLES CHRISTIAN, ) individually, ) ) Defendants. ) | Case No. 08 – CV – 1400 Honorable Judge Charles Norgle Magistrate Judge Brown JURY DEMANDED |

**MOTION FOR PREJUDGMENT ATTACHMENT ORDER, PRELIMINARY INJUNCTION, ACCELERATED DISCOVERY, OR OTHER RELIEF**

The Plaintiff, K-5 REALTY, LLC, a Florida limited liability company ("K-5"), by its attorneys, Gregg Minkow and Laurie Randolph of Hinshaw & Culbertson LLP, seeks a preliminary injunction order barring the Defendants, CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an Illinois corporation ("Contributed Mutual"), and CHARLES CHRISTIAN, individually ("Christian"), from disposing of any assets except for necessities of living until further order of this Court; an order requiring the Defendants to immediately disclose to Plaintiff and the Court the nature, extent, and location of their assets, and specifically how they disposed of funds received from the Plaintiff; and an order attaching such assets of the Defendants, not required for the necessities of life, as may be found. In support thereof, the Plaintiff states as follows:

**BASIS OF JURISDICTION**

The present action is brought pursuant to the Court's authority to hear cases in diversity under 28 U.S.C. § 1332(a)(1). The basis for diversity jurisdiction is spelled out in detail at ¶¶ 1 thru 13 of the Complaint, a courtesy copy of which is provided to the Court concurrently

herewith. To summarize, however:

    a.    The corporate defendant, Contributed Mutual, is a resident and citizen of the State of Illinois, having been organized under the Illinois Business Corporation Act.

    b.    The individual defendant, Charles Christian, is Contributed Mutual's president, but is a citizen and resident of the State of Arizona.

    c.    The Plaintiff is a citizen and resident of the State of Florida.

A copy of the Illinois Secretary of State's "Corporation File Detail Report," confirming the status of Contributed Mutual as an Illinois corporation and of Christian as its president, is attached as Ex. P.

## RELEVANT FACTS

The individual defendant, Charles Christian, resides in the State of Arizona, where the company of which he is president, Contributed Mutual, has offices. (See Affidavit of Plaintiff's Managing Member, Kevin Ward, attached as Ex. A..)

Contributed Mutual, through Christian, and the Plaintiff, through Kevin Ward, signed a series of documents in June, 2007, together comprising an agreement by Contributed Mutual to loan the Plaintiff $10 million for construction of an 18-unit condominium project. (Exs. B, C, and D.) As part of the arrangement, Christian and his company, Contributed Mutual, required the Plaintiff to advance a "Commitment Fee, Costs And Closing Fee" in the sum of $600,000.00 (referred to in the agreements as "CFC&CF," and referred to hereinafter as "the Fee"). See Ex. C. p. 1.

Plaintiff paid the $600,000.00 Fee, and it was deposited in Contributed Mutual's account at Home National Bank on June 25, 2007. (See clearing information on backside of cashier's check no. 081435 remitted by the Plaintiff, K-5 Realty, attached as Ex. E.)

The loan agreements specified that closing and disbursement of the initial loan proceeds

would occur on August 31, 2007. (See Ex. B, second page under "Closing.") Significantly, the agreements also provided unambiguously for a refund of the Plaintiff's $600,000.00 Fee advance if the loan did not close as planned. The agreements stated, at Ex. C, p. 1, under "Commitment Fee, Costs And Closing Fee: (CFC&CF)":

> "In the event the transaction contemplated in the Summary of Terms and Conditions [Ex. D] does not close, all payments received by (CMBMS) regarding the (CFC&CF) shall be refunded to you."[1]

The closing was repeatedly delayed by Christian and Contributed Mutual, to the frustration of the Plaintiff and its development plans. (See Ex. A and the trail of e-mail and facsimile correspondence attached as Group Ex. F.) Finally, a closing was set for December 3, 2007 (for Plaintiff to deliver to the title company all signed documents required for the closing), and December 5, 2007 (for the actual disbursement of funds). (Ex. A.) The documents were actually signed by Kevin Ward for the Plaintiff in advance of the closing (see opinion letter from Plaintiff's attorney dated November 29, 2007, attached as Ex. G), and were in fact delivered at or before the "dry closing" on December 3rd. (Ex. A.)

On December 5th, the title company expected Christian and Contributed Mutual to wire funds to the title company to facilitate disbursement of the loan proceeds. (See letter of November 29, 2007 and e-mail of December 5, 2007 from Joseph Shea, the attorney for Properties Title, LLC, attached as Group Ex. H.) However, the funding never came. (Ex. A.)

When Christian and Contributed Mutual failed to close the loan, Plaintiff and its attorney sent correspondence to Christian on December 10th (Ex. I) and January 23, 2008 (Ex. J), demanding a refund of the $600,000.00 Fee by January 30, 2008. Christian initially attempted to defend his failure to close, in response to Ex. I, by sending the letter attached hereto as Ex. K

---

[1] See, also, Ex. C, top of second page: "In the event a loan does not close CMBMS Refund Policy is to return 100% of the Borrower's (CFC&CF)."

3

dated December 11, 2007. However, in conversations in January, 2008 and again on February 6, 2008, Christian agreed to the refund.

Christian told Ward in January that he needed time to get the money back from insurers and others, to whom it had allegedly been given in order to purchase (i) key man life insurance for $10 million on Ward's life, (ii) a $5-7 million performance bond relating to a contractor, and (iii) a $10 million bond to facilitate assignment of Plaintiff's "obligations." However, in the conversation on February 6th, Christian said he had "straightened everything out" and would have the refund for Plaintiff by the following Friday, February 8, 2008. (Ex. A.)

Christian's explanation as to what had happened to the $600,000.00 the Defendants were supposed to refund to the Plaintiff sounds suspicious to begin with. Prior to an actual closing of the loan, neither Christian nor Contributed Mutual would have had an insurable interest in Ward's life, or any legal right to the issuance of a performance bond. In any event, the Fee still was not refunded on February 8th, or at any other time.

Subsequently, Plaintiff hired a private investigator who reported, on March 6, 2008, that Christian and Contributed Mutual had a judgment entered against them for more than $1.5 million in a Texas case on March 5, 2004, which was domesticated in the Arizona state court on April 22, 2004. (See Group Ex. L). The investigator also discovered that a "Satisfaction of Judgment" was filed in that case on January 16, 2008 – precisely when Plaintiff was seeking its refund, but was being put off by Christian with his story about alleged insurance and bond premiums he allegedly had to recover. (See Ex. M.)

A separate case filed against Christian and Contributed Mutual in 2004, seeking a refund of $100,000.00 in fees for a loan that never materialized (like the present case), was settled in 2005. (See complaint in that case, and order for dismissal pursuant to settlement, attached as

Group Ex. N.)

## APPLICABLE LAW

### 1. Prejudgment Attachment Standard

In this Motion, the Plaintiff seeks, among other things, an order of prejudgment attachment. Plaintiff's purpose is to prevent dissipation of funds necessary to satisfy any judgment it may obtain against the Defendants, for misuse of the Fee advance they were required to hold in trust for the Plaintiff's benefit.

The parties' agreements, at Ex. D, p. 5, in the section entitled "Jurisdiction," provides that "Any dispute or claim regarding the rights of any party hereto … or the accompanying Fee and Costs Letter shall be decided under Illinois law … ." Moreover, Rule 64 of the Federal Rules of Civil Procedure declares that state law is the source of the U.S. District Court's authority to enter an order for prejudgment attachment. The Rule states:

> "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."

In Illinois, the Court's authority to issue an order for prejudgment attachment of a defendant's assets appears at 735 ILCS 5/4-101, which states, in relevant part:

> "In any court having competent jurisdiction, a creditor having a money claim, whether liquidated or unliquidated, and whether sounding in contract or tort, or based upon a statutory cause of action created by law in favor of the People of the State of Illinois, or any agency of the State, may have an attachment against the property of his or her debtor, or that of any one or more of several debtors, either at the time of commencement of the action or thereafter, when the claim exceeds $20, in any one of the following cases:
>
> 1. Where the debtor is not a resident of this State.
>
> ***
>
> 7. Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors.

5

\*\*\*

8.  Where the debtor is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors."

### 2. Standard for Preliminary Injunction to Prevent Defendant from Becoming Judgment-Proof

Prejudgment attachment involves the actual seizure of property. Separately, however, Illinois law provides that a court also has the power to preliminarily enjoin a defendant from disposing of property when that would defeat the plaintiff's rights while the controversy is being decided, such as by rendering the defendant judgement-proof or by dissipating the very funds in controversy. *See, e.g., All Seasons Excavating Company v. Bluethardt*, 229 Ill. App. 3d 22, 27-8 (1st Dist. 1992).[2] To obtain an injunction against such disposal of assets under Illinois law, the plaintiff must show (1) a clear right or interest needing protection, (2) the absence of an adequate remedy at law, (3) irreparable harm if the injunction is not granted, and (4) a reasonable likelihood of success on the merits. *Id.*, at 229 Ill. App. 3d 26.

However, in establishing a likelihood of success on the merits, the plaintiff "is not required to make out a case which will in all events warrant relief at a final hearing. The petitioner need only (a) raise a fair question as to the existence of the right claimed, (b) lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and (c) make it appear advisable that the position of the parties should stay as they are until the court has had an opportunity to consider the case on the merits." *Id.*

---

[2] "Absent an injunction, defendants would have been free to systematically dispose of or encumber all of their assets and, in effect, render themselves judgment-proof. A denial of plaintiffs' request for injunctive relief would, therefore, have irreparably harmed William Roppolo in that he would have been obligated for the full amount owed under the note without the ability to recover against defendants. … [T]he fact that plaintiffs' ultimate relief may be a money judgment does not deprive a court of equity the power to grant a preliminary injunction."

6

Moreover, Illinois courts do not "balance the harms" where, as here, defendants acted with knowledge of the plaintiff's rights and understood the possible consequences. *Liebert Corp. v. Mazur,* 357 Ill. App. 3d 265, 287 (1st Dist. 2005).

The standard in the federal court for issuing a preliminary injunction has been similarly stated. "When evaluating the merits of a motion for preliminary injunctive relief, a district court must determine whether the party seeking the preliminary injunction has demonstrated that: (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest." *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, **149 F.3d 722, 726 (7th Cir., 1998).**

### 3.  Standard for Accelerated Discovery to Prevent Dissipation of Assets

Finally, either before or concurrently with the entry of an injunction against disposal of assets, Rule 26(d) of the Federal Rules of Civil Procedure gives the Court authority to order the immediate disclosure of information relating to assets that can easily be hidden or disposed of. *Ayyash v. Bank Al-Madina,* **233 F.R.D. 325, 326-7 (S.D.N.Y.  2005)**.

### APPLICATION OF LAW TO THE FACTS

Two things are clear.

First, there has been no loan closing, so the Plaintiff is entitled to a refund of its $600,000.00 Fee.

Second, until either a closing occurred, or a refund was demanded after a failed closing, the terms of Ex. C created a trust, under which Christian and Contributed Mutual were supposed to hold the Fee for the mutual benefit of the Plaintiff as borrower and Contributed Mutual as

7

lender. As the Illinois Supreme Court stated in *Eychaner v. Gross*, **202 Ill.2d 228, 253 (2002)**:

> "The controlling legal principles are quite settled. A trust "is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, *which arises as a result of a manifestation of an intention to create it.*" (Emphasis added.) Restatement (Second) of Trusts § 2 (1959). In Illinois, creation of an express trust requires: (1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee."

Here, there was a contract creating an express obligation to keep the Fee available for refund in the event the loan did not close; definite subject matter or trust property in the form of the Fee; ascertainable beneficiaries (initially both parties, and then, after the Defendants failed to close, the Plaintiff standing alone as beneficiary); a trustee (Christian and Contributed Mutual); and delivery of the trust property to Christian and Contributed Mutual on June 25, 2007. Once the trust was established, the Defendants, as trustees, were bound by a fiduciary duty to administer the trust property in accordance with the terms of the trust (*Woolard v. Woolard,* 2007 WL 2789097 (N.D. Ill.), at *5); in this case, that meant refunding the Fee to the Plaintiff when the loan for which it was given failed to materialize, and not using the Fee for any other purpose.

It is not possible at this early stage to be absolutely certain what Christian and Contributed Mutual have done with Plaintiff's refundable $600,000.00 Fee. However, based on certain facts,

(i)　the Defendants' lame explanation as to what they supposedly did with the funds;

(ii)　the suspicious timing of the sudden filing of a satisfaction of a four-year-old judgment against the Defendants, at the same time they were procrastinating in response to Plaintiff's demand for a refund of its refundable Fee; and

>  (iii) the suggestion in prior litigation that Christian and Contributed Mutual have improperly tried to hold onto refundable fee and cost advances before,

it seems plausible (indeed, likely) that Christian and Contributed Mutual breached their contract and their duty as trustees, by using the Plaintiff's Fee to pay off their other debts.

If the Defendants have in fact dissipated these funds, and if in fact they are taking from Peter to pay Paul as the circumstances suggest, then the Plaintiff will have no remedy at law and will have suffered irreparable injury – to the tune of $600,000.00 – if the Defendants are permitted to dispose of their remaining assets while this case is pending.

Further concern arises as to the whereabouts of the Plaintiff's funds, and how the Defendants disposed or intend to dispose of them, from the fact that the purported loan broker who introduced the Defendants to the Plaintiff – Pacific Guzman – appears to have been charged by the Attorney General in Utah for "taking advance fees for commercial loans which were never made." See News Release from Utah Department of Commerce attached as Ex. O; see, also, Ward Affidavit (Ex. A). While guilt by association is not to be assumed lightly, the parallels between the Utah charges, on the one hand, and the Defendants' conduct giving rise to the present case on the other hand, indicates at least the possibility of a purposeful, fraudulent scheme, which the actors will likely take measures to hide if they are permitted to do so.

Plaintiff's attorney left voicemail messages for Charles Christian on March 12 and 13, 2008 which have gone unreturned, and the Defendants presumably are not inclined to voluntarily address the issue of what they did with Plaintiff's Fee.

The circumstances are ripe for prejudgment attachment under 735 ILCS 5/4-101 (1), (7), and (8), since the Defendants reside outside the state, and they surely have, at least, fraudulently concealed or disposed of property (theirs or Plaintiff's) so as to hinder or delay the Plaintiff as a creditor.

In addition, Plaintiff has shown at least a reasonable likelihood of prevailing on the merits as to its breach of contract and breach of fiduciary duty claims. It also will have no adequate remedy at law, but will suffer irreparable harm, if the preliminary injunctive relief sought – requiring the Defendants to disclose immediately the nature, extent, and location of their assets, and prohibiting them from disposing of any such assets except for necessities of living until further order of this Court – is denied.

First, however, the scope of Defendants' assets – and specifically what they did with the Fee they were supposed to hold in trust – need to be promptly ascertained. Further harm to the Plaintiff may be prevented – and no harm would result to the Defendants – if the Court orders that discovery be expedited by requiring the Defendants to immediately disclose what they did with the Plaintiff's Fee after it was deposited in the Defendants' bank account, and what property remains at their disposal to satisfy their trust and contractual obligations to the Plaintiff.

WHEREFORE, the Plaintiff requests an order as follows:

1. Requiring the Defendants to immediately disclose to the Court and Plaintiff, in writing under oath, or in person before this Court, the nature, extent, description, and location of all of their assets, including but not limited to the present balances of all accounts held or titled in the names of the Defendants either separately, together, or in co-ownership with third parties;

2. Requiring the Defendants to immediately disclose to the Court and Plaintiff the disposition of the $600,000.00 Fee deposited with them by the Plaintiff, including but not limited to by way of providing to the Court and the Plaintiff all statements of account received from Home National Bank since June 21, 2007;

3. Enjoining the Defendants and all persons actively in concert with them from disposing of any assets except for the necessities of life until contrary order by this Court, and

requiring Defendants to report to the Court and the Plaintiff each month the expenditures made from such assets for necessities of life;

4.  Ordering the U.S. Marshall's office serving the location of each asset identified by the Defendants under Paragraph 1, above, to attach or arrange with local authorities for attachment of Defendants' assets in accordance with 735 ILCS 5/4-110 and 735 ILCS 5/4-111, and setting bond to be posted by Plaintiff in accordance with 735 ILCS 5/4-108 and 735 ILCS 5/4-109; and

5.  Such other relief as the Court deems appropriate in accordance with applicable rules of law and equity.

                                        Respectfully submitted,

                                        K-5 REALTY, LLC, a Florida limited liability
                                        company, Plaintiff


                                        By:  s/ Gregg I. Minkow
                                             One of its Attorneys

Gregg I. Minkow
Laurie S. Randolph
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ARDC No. 6181058
E-mail: gminkow@hinshawlaw.com

6292408v3 886125

## CERTIFICATE OF SERVICE

    I hereby certify that on March 18, 2008, I electronically filed **Motion for Prejudgment Attachment Order, Preliminary Injunction, Accelerated Discover, or Other Relief** with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system. Notification of such filings(s) was sent via Hand Delivery and UPS Overnight Delivery to the following:

    Charles Christian, as President on behalf of
    Contributed Mutual Benefits Mortgage Services, Inc.
    8655 E. Via Del Ventura, Suite G-200
    Scottsdale, AZ 85258


    Charles Christian, individually
    8655 E. Via Del Ventura, Suite G-200
    Scottsdale, AZ 85258


    HINSHAW & CULBERTSON LLP

    By:  s/ Gregg I. Minkow
           One of its Attorneys

Gregg I. Minkow
Laurie S. Randolph
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ARDC No. 6181058
E-mail: gminkow@hinshawlaw.com

6292408v3 886125