# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| K-5 REALTY, LLC, a Florida limited liability company, | )<br>)<br>) |
| Plaintiff, | )  Case No.  08 – CV – 1400 |
| v. | )<br>)  Honorable Judge Charles Norgle |
| CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an Illinois corporation, and CHARLES CHRISTIAN, individually, | )  Magistrate Judge Brown<br>)<br>)  JURY DEMANDED<br>) |
| Defendants. | )<br>) |

## AFFIDAVIT

The undersigned, Kevin Ward, having been duly sworn upon oath, states as follows:

1. I am the Managing Member of K-5 Realty, LLC ("K-5 Realty"), with offices at 1435 East Venice Avenue, Suite 226, Venice, Florida 34292. I have held that position since prior to January 1, 2007.

2. K-5 Realty is a limited liability company organized and in good standing under the laws of the State of Florida.

3. As Managing Member of K-5 Realty, my duties included the negotiation of a construction loan with Contributed Mutual Benefits Mortgage Services, Inc. ("Contributed Mutual"), an Illinois corporation, and its president, Charles Christian ("Mr. Christian").

4. K-5 Realty, through me as its agent, and Contributed Mutual, through Mr. Christian as its agent, signed and entered into a series of three (3) letter agreements which are attached hereto as Exs. B, C and D, and which together comprise what I refer to in this Affidavit as the "Loan Agreement."

5. Ex. C required K-5 Realty to pay in advance, as a condition of the loan, various fees and costs referred to in the Loan Agreement as "CFC&CF," in the sum of $600,000.00.

6. I paid to Contributed Mutual the $600,000.00 "CFC&CF" called for by Ex. C, by way of Cashier's Check No. 81435 attached hereto as Ex. E, which I purchased on behalf of K-5 Realty, which I sent to Mr. Christian at Contributed Mutual by overnight courier on June 21, 2007.

7. Mr. Christian had told me that had we instead chosen to wire the funds, they should be wired to Home National Bank in Scottsdale, Arizona, pursuant to the "Wiring Instructions" which Mr. Christian e-mailed to me. Those Wiring Instructions are attached hereto as the last page of Ex. E.

8. The back of the Cashier's Check, forming the second page of Ex. E, contains an endorsement showing that the funds were deposited at Home National Bank, with the same routing number that appears in the Wiring Instructions.

9. The endorsement from Home National Bank shows that the $600,000.00 amount of the check was "credited to the account of the within named payee," namely Contributed Mutual.

10. Consequently, it is clear that Mr. Christian and Contributed Mutual received the CFC&CF from K-5 in a timely manner and in a lump sum.

11. Ex. A required the loan to close, with disbursement of loan proceeds by Contributed Mutual, on August 31, 2007.

12. Mr. Christian repeatedly postponed the closing on the loan.

13. My various e-mails and facsimile correspondence to Mr. Christian appear in Ex. F attached hereto. I sent these items to Mr. Christian on the dates appearing in the facsimile receipts and electronic mail messages forming parts of Ex. F.

14. Mr. Christian eventually agreed to schedule a closing, including an initial disbursement of funds in accordance with Exs. B, C, and D, for December 5, 2007. We agreed that I would appear at Properties Title, the title insurance company that was going to insure collateralization of the loan, to deliver the further signed documents required for that closing. The disbursement of funds, according to Mr. Christian, would occur on December 5, 2007.

15. A list of the documents which I presented to the closing officer for Properties Title at the "dry closing" on December 3, 2007 appears in Ex. G, which is the opinion letter from my transactional attorney, Robert Moore, stating that in his opinion those documents were valid and binding on K-5 Realty.

16. I in fact appeared at Properties Title on December 3, 2007, to hand deliver the documents, which were checked in by the title insurance officer, a gentleman named Joseph Shea.

17. I complied with all the requests that Mr. Christian made in connection with the loan closing.

18. Notwithstanding my compliance with all of Mr. Christian's requests, Mr. Christian and Contributed Mutual never disbursed funds or closed the loan on December 5, 2007 or at anytime thereafter.

19. Ex. C states that the CFC&CF was to be refunded if the loan failed to close.

20. On December 10-11, 2007, I sent to Mr. Christian, by electronic mail, certified mail (return-receipt requested), and regular First Class mail, the letter attached hereto as Ex. I,

terminating the transaction due to the failure of Mr. Christian and Contributed Mutual to close the loan as agreed.

21. In that letter, I also demanded a refund of K-5 Realty's $600,000.00 CFC&CF by January 30, 2008, in accordance with the terms of the Loan Agreement.

22. Mr. Christian responded by letter which I received, dated December 11, 2007, attached hereto as Ex. K.

23. After receiving Ex. K, I had an oral conversation with Mr. Christian in early- to mid-January, 2008, during which he told me that he agreed to refund the CFC&CF. In that conversation, however, Mr. Christian stated that he had already used the money to obtain a life insurance policy on my life with a payout of $10 million upon my death, a performance bond on for work by a contractor that we anticipated using for construction in the sum of $7 million, and a $10 million bond to facilitate the assignment of K-5 Realty's "obligations" to some third party, who would have the right to receive K-5 Realty's performance in place of Contributed Mutual. Mr. Christian said, during the conversation, that he needed time to get back from the insurers and bondsmen the premiums he had paid for the aforesaid life insurance, performance bond, assignment-related bond.

24. I had a further conversation with Mr. Christian on February 6, 2008, in which Mr. Christian telephoned me in response to a call that I had made to him and in which I had left him a message. I received Mr. Christian's call on my cell phone (whose number is 941-223-5318), and recognized Mr. Christian's voice and his phone number, which appeared on my phone's information screen as a "caller ID." In that conversation on February 6, 2008, Mr. Christian said he had "straightened everything out" and would refund the $600,000.00 CFC&CF to K-5 Realty two (2) days later, on Friday, February 8, 2008.

25. Despite Mr. Christian's assurances on February 6, 2008, he and Contributed Mutual never refunded any portion of the CFC&CF, either on February 8, 2008 or at any other time.

26. After February 8th came and went without a refund, I contacted attorneys in Illinois, because the Loan Agreement specified courts located in Cook County, Illinois as the venue for any disputes arising under the Agreement.

27. My Illinois attorneys hired a private investigator, Daniel Perez of Subrosa Investigations, who informed them on March 6, 2008 that he had discovered a Texas state court judgment which had been entered against Mr. Christian and Contributed Mutual in March 2004, which was domesticated in the State of Arizona (where Mr. Christian and Contributed Mutual have offices) on April 22, 2004 (attached as Ex. L).

28. The investigator also informed us that a "Satisfaction of Judgment" was filed in that case only recently, on January 16, 2008 (attached as Ex. M). This was precisely the time during which I was being told by Mr. Christian to hold on and wait for a refund of the $600,000.00 that K-5 Realty had paid as CFC&CF for its separate transaction.

29. The investigator also discovered a separate case filed against Mr. Christian and Contributed Mutual, in the U.S. District Court in Chicago in 2004, alleging a similar situation as mine – wherein Mr. Christian and Contributed Mutual had taken a fee representing 10% of the intended principal balance of a loan, allegedly never made the loan, but attempted to keep the fee. The papers from that case are attached hereto as Ex. N.

30. K-5 Realty has a just claim against the Defendants in this cause, Charles Christian and Contributed Mutual Benefits Mortgage Services, Inc., on account of their misapplication or dissipation of the CFC&CF as described above, and the Affiant believes that K-5 Realty is

entitled to recover from the aforesaid Defendants, after allowing all just credits and set-offs, the sum of at least $600,000.00, which is now due.

31. The Affiant has good reason to believe, and does believe, that Charles Christian and Contributed Mutual Benefits Mortgage Services, Inc. have fraudulently concealed, assigned, or otherwise disposed of their own property, or the property of K-5 Realty, in the sum of at least $600,000.00, so as to hinder or delay K-5 Realty in recovering its CFC&CF deposit in that amount, whether by (i) giving it to insurers and bondsmen where an insurable interest and a legal right to the bond had not yet accrued because the contemplated loan to K-5 Realty had not closed, or (ii) by paying K-5 Realty's money to the judgment creditor in case no. 342-203957-04 in the District Court of Tarrant County, Texas, domesticated in the State of Arizona as Case No. CV 2004 007498 in the Superior Court of Arizona for Mericopa County, or (iii) otherwise using the money for a purpose other than the loan to K-5 Realty or the required refund to K-5 Realty.

32. Defendant Charles Christian and Defendant Contributed Mutual Benefits Mortgage Services, Inc. have offices in the State of Arizona at 8655 E. Via Del Ventura, Suite G-200, Scottsdale, Arizona 85258.

33. On information and belief, based upon information collected by private investigator Daniel Perez, Defendant Charles Christian has a home residence at 25942 North 104th Place, Scottsdale, Arizona.

34. I was introduced to Charles Christian and Contributed Mutual by a man named Pacific Guzman, who claimed to be a loan broker arranging commercial loans under the company name Pacific Lending Group, Inc., purportedly with offices at 1331 W. Baseline Road, Mesa, Arizona, 85202, ph: (877) 438-8340. Mr. Guzman told me and my broker, Wayne Patton, by telephone prior to June 15, 2007, that Mr. Christian had loaned millions of dollars on major

commercial projects, and was therefore well able to make the loan which K-5 Realty was then seeking. As of March 13, 2008, the website that I had previously visited for Pacific Lending Group, Inc. was gone, and I discovered that day on the Internet the News Release attached hereto as Ex. O, in which the Utah Attorney General is said to have filed criminal charges against Mr. Guzman for taking advance fees for commercial loans which were never made.

34.　Except as stated otherwise above, Affiant has personal knowledge that the foregoing statements are true.



FURTHER AFFIANT SAYETH NAUGHT.

_____
Kevin W. Ward

SUBSCRIBED and SWORN to

before me this 17th day of March, 2008.

_____
Notary Public    ELAINE BRIDGES

Gregg I. Minkow
Laurie S. Randolph
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ARDC No.: 6181058
E-mail: gminkow@hinshawlaw.com
E-mail: lrandolph@hinshawlaw.com

8