# Exhibit A



June 22, 2007

CONFIDENTIAL

**COMMITMENT**

LOAN NO.: TCPL-57331

Kevin W. Ward
165 Sugar Hill Dr.
Osprey, Fl. 34229

Borrower:
K-5 Realty, LLC,
1435 E. Venice Ave. Suite 226,
Venice, Fl. 34292

Dear Mr. Ward,

RE:   A Takeout Construction Phase Loan in the amount of ($10,000,000) Dollars.

***Financing.***   "K-5 Realty, LLC." "Kevin Ward" ("you" or "Company") has advised Contributed Mutual Benefits Mortgage Services, Inc. ("we" or "us" or "CMBMS") that the Company would like to have ($6,000,000) available which is the first phase of the ($10,000,000) Takeout Construction Phase Loan ("TCPL") to payoff a ($1,500,000) Dollar existing first lien and design and construct a three story, eighteen unit (18 unit) condominium building, with the balance. The Financing consists of a ($10,000,000) Takeout Construction Phase Loan (secured by, among other things, the pledge by "K-5 Realty, LLC." "Kevin Ward" of "the Property" all improvements, sales, sale proceeds, all leases, management agreements, all other agreements, all plans and specifications, and other assets and guarantees of the project and Borrower as more specifically set forth in the Summary of Terms and Conditions ("Term Sheet"). Part of the Loan proceeds shall be used to cover the costs of a reserve fund sufficient to debt service the Takeout Construction Phase Loan for 30-months. One week prior to the Closing Date we shall give an indication of the applicable interest rate of the Takeout Construction Phase Loan as described in the Term Sheet.

***Commitment.***   Subject to the terms and conditions as stated in the Term Sheet, we are pleased to commit ($10,000,000) as a Takeout Construction Phase Loan ($6,000,000) of which is the first phase. Upon the execution and delivery of the loan documents ("Closing") proceeds in the full amount necessary to pay for any agreed upon disbursements shall be made available through the escrow set up to handle the closing. In the event this (TCPL) is paid off ahead of time any funds remaining with the Lender as part of the 30-month construction loan interest reserve will be released to the Borrower. A legal description of the property will be provided by the Borrower and shall be stated in our Loan Agreement.

*Conditions to Commitment.* Our commitment is conditioned on (a) no material adverse change occurring in the business, assets, financial condition, performance or prospects of the Company, (b) our being satisfied with the results of our continuing due diligence review of the Company, the collateral and discovering no information in the course of our due diligence or otherwise that we believe has a materially negative impact on any of the items in this subparagraph (b) or subparagraph (a) above, (c) the information provided by the Company as described above being correct and complete in all material respects, (d) the conditions to be set forth in the loan documents being satisfied, (e) no litigation or other action being pending or threatened seeking an injunction, damages or other relief relating to the financing that will survive the closing, (f)) no material adverse change occurring in governmental regulation or policy that adversely affects you or us. Our commitment is also conditioned on the negotiation, execution and delivery of loan documents acceptable to you, respective counsel, and us no later than July 31, 2007. The Term Sheet did not include all of the conditions, covenants, representations, warranties, defaults, definitions and other terms to be contained in the loan documents, some of which must still be developed and agreed upon. We reserve the right to propose additional terms.

*Closing.* The closing date shall be August 31, 2007. You must provide all documentation including but not limited to presales, project plans and specifications, management agreements, lease agreements, appraisals, and financial projections to us 30-days prior to the date of closing.

*Indemnification and Expenses.* You agree to indemnify and hold harmless us and our directors, officers, employees, agents, attorneys and affiliates (each, an "indemnified person") from and against all losses, claims, damages, liabilities and expenses which may be incurred by or asserted against an indemnified person in connection with or arising out of this letter, the Financing, the use of the proceeds thereof, or any related transaction, regardless of whether the indemnified person is a party thereto, and to reimburse each indemnified person on demand for all reasonable legal and other expenses incurred in connection with investigating or defending any of the foregoing, provided that this indemnity will not, as to any indemnified person, apply to losses, claims, damages, liabilities or expenses arising from the willful misconduct or gross negligence of such indemnified person or any breach by such indemnified person of its obligations under this letter. No party hereto will be liable to any other party hereto for indirect or consequential damages relating to any such matters. You also agree to pay all of our reasonable expenses (including fees and expenses of our outside counsel) incurred in connection with preparing, negotiating and enforcing this letter and the loan documents, conducting the due diligence reviews, and related matters.

*General.* Your obligations under Indemnification and Expenses above will survive the Closing or the expiration or termination of our commitments in this letter.

This letter is supplemented by a separate, modified, previously submitted by you, Letter of Funding Request dated June 10, 2007. Said letter is subject to all of our Normal terms and conditions for loans similar in nature. This letter, the Letter of Funding Request as described before hand and the Term Sheet constitute the entire understanding of the parties hereto with respect to the subject matter hereof and supersede all prior and current understandings and agreements, whether written or oral. Any changes to this letter, the Letter of Funding Request or the Term Sheet must be agreed in writing by the parties hereto. This letter, the Letter of Funding Request and the Term Sheet may be executed in any number of counterparts (and delivery of an executed counterpart by telecopy will be effective as delivery of a manually executed counterpart), which together will constitute one agreement, and will be governed by and construed in accordance with the laws of the State of Illinois. The parties hereto hereby waive any right to trial by jury with respect to any claim, action, suit or proceeding arising out of or contemplated by this letter.

You agree not to disclose this letter, the Letter of Funding Request or the Term Sheet or any of their terms, directly or indirectly, to any person other than your employees, agents and advisors who are directly involved in the financing or related transactions and agree not to disclose the same, or as may be required by law (in which case you agree to inform us promptly thereof); provided that after you sign and return this letter, the foregoing restrictions will cease to apply to this letter but continue to apply to the Letter of Funding Request. This letter is for your benefit only and may not be relied upon by, and does not create any rights in favor of, any other person or entity, including those who are authorized to receive copies hereof.

Please sign and return to us a copy of this letter by June 27, 2007.

We look forward to working with you on this transaction.

Very truly yours,

Contributed Mutual Benefits
Mortgage Services, Inc.

By: _____

Name: _____Charles Christian_____

Title: _____President_____


Accepted and agreed to:
K-5 Realty, LLC

By: _____
       Kevin W. Ward

Title: _MANAGING MEMBER_

Dated: _6/25/07_