**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| K-5 REALTY, LLC, | ) | |
| a Florida limited liability company, | ) | |
| | ) | Case No. 08 C 1400 |
| Plaintiff, | ) | |
| v. | ) | Honorable Judge Charles Norgle |
| CONTRIBUTED MUTUAL BENEFITS | ) | |
| MORTGAGE SERVICES, INC., | ) | Magistrate Judge Brown |
| an Illinois corporation, and | ) | |
| CHARLES CHRISTIAN, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendants, CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an

Illinois corporation ("Contributed"), and CHARLES CHRISTIAN, individually ("Christian") state

as follows as their answer to Plaintiff's Amended Complaint:

**PARTIES, JURISDICTION & VENUE**

1. K-5 is a limited liability company organized under the laws of the State of Florida,

engaged in the business of developing and building real estate. Its principal place of business is, and

has been since prior to the events set forth in this Amended Complaint, 1435 East Venice Avenue,

Venice, Florida, 34292.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in the  foregoing paragraph.

2. K-5 has no offices or property located in the State of Illinois, and has never had any

offices or property in Illinois.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the

1

truth of the allegations in the foregoing paragraph.

3.  The sole members and sole owners of K-5 Realty since March 7, 2005 have been Kevin Ward ("Ward") and George Ward. Ward resides at 165 Sugar Mill Drive, Osprey, Florida, 34229, and has resided there continuously since prior to the events set forth in this Amended Complaint. George Ward resides at 440 Palmetto Court, Venice, Florida, 34285, and has resided there continuously since prior to the events set forth in this Amended Complaint. Ward and George Ward are both domiciled in the State of Florida with the intent to reside there indefinitely.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

4.  Contributed is a corporation organized in 2004 under the laws of the State of Illinois, whose registered agent, Illinois Corporation Service, is listed with the Secretary of State of Illinois as having its office in Springfield, Illinois. Contributed's principal place of business is, and has been continuously since prior to the events set forth in this Amended Complaint, 8655 E. Via Del Ventura, Suite G-200, Scottsdale, Arizona, 85258.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

5.  Christian is, and has been continuously since prior to the events set forth in this Amended Complaint, the President of Contributed, residing in Scottsdale, Arizona. Christian resided at 25942 N. 104th Place, Scottsdale, Arizona, at the time this lawsuit was filed. Christian is domiciled in the State of Arizona with the intent to reside there indefinitely.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

6.  Contributed is, and has been continuously since prior to the events set forth in this Amended Complaint, a citizen of the State of Illinois and the State of Arizona under 28 U.S.C. §

1332 (c)(1).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

7.  Christian is, and has been continuously since prior to the events set forth in this Amended Complaint, a citizen of the State of Arizona.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

8.  K-5, Ward, and George Ward are, and have been continuously since prior to the events set forth in this Amended Complaint, citizens of the State of Florida.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the  foregoing paragraph.

9.  Subject matter jurisdiction in this Court is proper on the basis of diversity of the parties pursuant to 28 U.S.C. §1332(a)(1).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

10.  This action arises out of a breach of contract by Contributed to make a construction loan to K-5, and misappropriation of a sizeable up-front loan fee ($600,000.00) by Christian and Contributed after Contributed failed to close on the loan, and then failed to refund

the fee as demanded by K-5.

ANSWER: Defendants denies the allegations set forth in the foregoing paragraph.

11.  The written agreements sued upon provide that any dispute or claim regarding the rights of any party, or the interpretation of the agreements, shall be decided under Illinois law and brought in the "appropriate court in and for Cook County, Illinois."

ANSWER: Defendants state that the written agreement speaks for itself and therefore neither admit nor deny the allegations set forth in the foregoing paragraph.

3

12.   The aforesaid agreement was drafted and signed by Christian, as President of Contributed.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph. Further answering, Defendants state that Plaintiffs attorneys reviewed the agreement and demanded and received substantial changes to the contract.

13.  This Court has personal jurisdiction over Contributed pursuant to the "Illinois Long-Arm Statute," at 735 ILCS 5/2-209(b)(3), and considerations of due process under the Fourteenth Amendment to the United States Constitution, by reason of Contributed being acorporation organized under the laws of the State of Illinois.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

14.  This Court has personal jurisdiction over Christian pursuant to the "Illinois Long-Arm Statute," at 735 IICS 5/2-209(a)(12), and considerations of due process under the Fourteenth Amendment to the United States Constitution, by reason of Christian's performance of duties as a director or officer of a Contributed, a corporation organized under the laws of the State of Illinois.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

15.  Venue in this Court is proper pursuant to 28 U.S.C. §1391 (a)(3).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

16.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) with respect to Counts II thru IV seeking civil remedies under Illinois state common law for conversion and breach of fiduciary duty, and for theft or exploitation pursuant to Florida Statutes Annotated §772.11.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

## COUNT I — BREACH OF CONTRACT (CONTRIBUTED)

17. K-5 incorporates herein by this reference Paragraphs 1 through 16, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-16 above as though fully stated herein.

18. In June, 2007, K-5 (through its Managing Member, Kevin Ward) and Contributed (through Christian as its President) signed and entered into a series of three (3) written agreements, namely:

a. Commitment Letter (attached hereto as Exhibit A)

b. Commitment Fee and Costs letter (attached hereto as Exhibit B); and

c. Summary of Terms and Conditions (attached hereto as Exhibit C).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

19. Exhibits A, B, and C are referred to collectively hereinafter as the "Loan Agreement."

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

20. Pursuant to the Loan Agreement, Contributed agreed to loan K-5 the sum of $ 10 million, in two phases ($6 million and $4 million), for the construction of an 18-unit condominium building in Florida to be known as Kymberly's Court.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph. Contributed's role was that of a broker on these transactions.

21. While specific terms of the loan arrangement appear in the Loan Agreement itself, those terms included, among others, the following:

a. Closing on the first phase of the loan, including disbursement of a portion of the $6 million in principal (and availability of the rest as needed by K-5 thereafter), was to occur on August 31,

2007.

b. K-5 was to pay, in advance of the closing, a Commitment Fee, Costs And Closing Fee in the sum of $600,000.00 (referred to repeatedly in the Loan Agreement as "CFC&CF"); and

c.     The CFC&CF was to be refunded if the loan did not close, regardless of the reason, provided the $600,000.00 amount of the CFC&CF was originally paid by K-5 in a lump sum.

ANSWER: Defendants state that the documents speak for them selves and therefore neither admit nor deny the allegations set forth in the foregoing paragraph.  Furthermore the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

22.  K-5 paid the $600,000.00 sum of the CFC&CF in a lump suns by cashier's check dated June 21, 2007, made payable to Contributed, which Contributed duly cashed and deposited in its bank account on or about June 25, 2007.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

23.  K-5 performed all conditions required on its part under the Loan Agreement.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

24.  Numerous times, without fault on the part of K-5. Christian, on behalf of Contributed, postponed the closing date of the first phase of the loan.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

25.  Finally, Contributed set a final closing date of December 5, 2007 for the first phase of the loan, with the actual disbursement of funds to take place on said December 5, 2007.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

26.  K-5, through Kevin Ward, appeared at a "dry closing" on December 3, 2007, at the

6

offices of Properties Title in Sarasota, Florida, to deliver any remaining documents needed or requested for the December 5th closing and disbursement.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

27. On December 3, 2007, and at all times before that date and thereafter, K-5 and Ward were ready, willing and able to perform under the Loan Agreement.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

28. Ward, on behalf of K-5, executed all documents required by Contributed in connection with the intended closing, and performed all other tasks requested by Contributed in order for the closing and loan disbursements to proceed.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

29. By contrast, and in spite of K-5's performance, Contributed did not countersign any of the closing agreements, did not disburse or make available any funds on December 5th or at any other time, and, in fact, did not perform any of the duties required on its part in order to close the loan.

ANSWER: Defendants admit that Contributed never disbursed any loan proceeds and never countersigned the loan documents and denies the remaining allegations set forth in the foregoing paragraph.

30. Contributed breached the Loan Agreement by failing to close, and to disburse and make available the loan proceeds, as required by that agreement.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

31.  On December 10, 2007, following the failed closing, Ward sent correspondence to Christian, as the representative of Contributed, revoking the documents signed at the "dry closing" on December 3, 2007, terminating the loan transaction due to breach by Contributed, and demanding the return of the $600,000.00 CFC&CF within forty-five (45) days (i.e., by January 30, 2008). A copy of that correspondence is attached hereto as Exhibit D.

ANSWER: Defendants state that the document attached speaks for itself and therefore neither admit nor deny the allegations set forth in the foregoing paragraph.  Furthermore the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

32.  On January 23, 2008, attorney Robert Moore, on behalf of K-5, sent to Christian a second demand for refund as a "reminder." A copy of that further demand is attached hereto as Exhibit E.

ANSWER: Defendants state that the document attached speaks for itself and therefore neither admit nor deny the allegations set forth in the foregoing paragraph.  Furthermore the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

33.  Having already breached the Loan Agreement by failing to close and disburse in a timely fashion, Contributed further breached the Loan Agreement by failing to refund the $600,000.00 CFC&CF when the loan did not close as it was supposed to.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

34.  As a direct and proximate result of the aforesaid breach of contract by Contributed, K-5 has been damaged in the sum of at least $600,000.00 representing the CFC&CF which has not been

returned to it; lost profits due to delays in the funding and start-up of the condominium construction; interest on other loans, which the Loan Agreement was intended to pay off, as a result of delay and failure by Contributed to close the loan as scheduled; attorneys' fee incurred in having to pursue compliance with the Loan Agreement; and other damages.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT II — CONVERSION (CONTRIBUTED AND CHRISTIAN)

35.  K-5 incorporates herein by this reference Paragraphs 1 through 34 of Count I, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-34 above as though fully stated herein.

36.  The $600,000.00 CFC&CF payment by K-5 comprises identifiable property designated to be refundable in the event that, for any reason, the Loan Agreement did not close.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

37.  At all times following K-5's demand for refund, K-5 had an absolute and unconditional right to immediate possession of the CFC&CF funds.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

38. Contributed and Christian, jointly and severally, wrongfully and without authorization assumed control, dominion, or ownership over the CFC&CF funds, and have refused to turn them over in response to the demands made by K-5.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

9

39.  In point of fact, it appears that Christian has converted the funds to his own use. When asked why the funds were not being immediately returned, Christian told Ward that Christian had used the $600,000.00 in CFC&CF funds to buy key man Life insurance for $10 million on Ward, a $5-7 million performance bond on a contractor, and a $10 million bond to facilitate assignment of K-5's "obligations." Christian said he needed time to recover the money from these applications in order to refund them to K-5. However, prior to the closing of the loan, neither Christian nor Contributed would have an insurable interest in Ward's life, or any legal right to the issuance of a performance bond. Moreover, on information and belief Christian and Contributed satisfied on January 16, 2008 a judgment obtained against them in the State of Texas in 2004. In light of the implausibility of Christian's explanation for how he had deployed the CFC&CF under his control, and the coincidence in time of' the Defendants' satisfaction of the judgment against them from 2004, it appears that Christian and Contributed have used the CFC&CF funds other than for their intended purpose, in violation of their fiduciary duty, and are now covering up.

ANSWER: Defendants deny the allegations related to conversion, object to the hearsay attributed to Christian, object to the legal conclusions offered as factual allegations and deny the remaining allegations in the foregoing paragraph.

39.  As a direct and proximate result of the Defendants' foregoing conduct, K-5 has suffered damages in an amount equal to the $600,000.00 tortiously and wrongfully withheld from it by the Defendants.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

40.  The Defendants acted intentionally, with malice, and with a reckless disregard for the

harm that they were causing to K-5 by misusing, the CFC&CF funds as they apparently have done.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT III — BREACH OF FIDUCIARY DUTY (CHRISTIAN AND CONTRIBUTED)

41.  K-5 incorporates herein by this reference Paragraphs 1 through 41 of Count II, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-41 above as though fully stated herein.

42.  It is the custom and practice in the industry for a lender to hold funds like the CFC&CF in escrow for the benefit of both the lender and borrower, until it is determined whether the loan has closed in accordance with the loan contract.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

43.  The Loan Agreement in this case created an express trust under which, prior to closing of the loan and distribution of loan proceeds, Christian and Contributed held the $600,000.00 CFC&CF in trust for the benefit of K-5.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

44.  At all times, as a result of that trust, Christian and Contributed had a fiduciary duty to preserve the availability of the $600,000.00 CFC&CF for refund to K-5 in the event the loan did not close.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

45.  Christian and Contributed breached their fiduciary duty to K-5 by disposing of the

$600,000.00 CFC&CF in a manner which did not benefit K-5 and by refusing, or not having it available, for a refund to K-5.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

46. As a direct and proximate result of the Defendants' foregoing conduct, K-5 has suffered damages in an amount equal to the $600,000.00 which was either dissipated or and wrongfully withheld from it by the Defendants.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

47. The Defendants acted intentionally, with malice, and with a reckless disregard for the harm that they were causing to K-5 by misusing the CFC&CF funds as they apparently have done.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT IV— CIVIL THEFT (CHRISTIAN AND CONTRIBUTED)

48. K-5 incorporates herein by this reference Paragraphs I through 48 of Count IV, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-48 above as though fully stated herein.

49. Pursuant to Florida Statutes Annotated §772.11, any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of a violation of Florida Statutes Annotated §8 12.014 (among other provisions) has a cause of action for three-fold the actual damages sustained, along with reasonable attorneys' fees and court costs.

ANSWER: Defendants state that the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

50. §812.014, in turn, states that a person commits theft if he knowingly uses the property of another with intent to either temporarily or permanently deprive the other person of a right to the property or a benefit Isom the property, or appropriate the property to his or her own use or to the use of any persons not entitled to the use of the property.

ANSWER: Defendants state that the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

51. At all relevant times, Christian and Contributed knew that when they failed to close and disburse under the Loan Agreement in a timely fashion, K-5 was entitled to a return of the CFC&CF funds in the sum of $600,000.00.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

52. Despite the aforesaid knowledge, Christian knowingly obtained the CFC&CF funds from Contributed, or Christian or Contributed used those funds, with the intent to temporarily or permanently deprive K-5 of its right to those funds or to the benefit from those funds.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

53. Based, among other things, upon what appears to be the misinformation conveyed by Christian about how the money was used, such deprivation appears to have been with intent to temporarily or permanently appropriate the property to Christian's own use, or to the use of Contributed, where it was clear to Christian and Contributed that they were not entitled to use of the funds.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

54. 772.11 requires pre-suit demand for the treble damages amount, and allows the recipient of that demand to a release by making the treble damages payment within thirty (30) days after receiving the demand. K-5 has sent the demand notice concurrently with the filing of this action (Exhibit F hereto), and stands ready, willing, and able to voluntarily dismiss this count of the Complaint in the event (however unlikely) that the Defendants voluntarily pay three times the $600,000.00 sum that they have wrongfully withheld.

ANSWER: Defendants state that the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

A-E; and for such other and further relief as this court deems just.

## <u>AFFIRMATIVE DEFENSES</u>

Defendants state as follows as their affirmative defenses to the complaint.          Further, Defendant reserves the right to present additional affirmative defenses as they become known:

### <u>Statute of Frauds.</u>

Defendants interpose the statue of frauds to any claim against defendants for services based on an oral agreement for services that is not to be performed within one (1) year from the date of its making.

### <u>Failure to state a claim</u>

Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

<u>Improper Party</u>

Plaintiffs have named an improper part insofar as Charles Christian personally is made a defendant to this case.

<u>Parol Evidence</u>

To the extent that plaintiff's claim rests on oral representation or agreements made prior to the execution of the written contract and not contained therein, plaintiff's claim is barred by the parol evidence rule.

WHEREFORE, defendants requests an order dismissing the case and awarding them their costs.

CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., and CHARLES CHRISTIAN


_/S/_____

BY:    David T. Grisamore, Esq.

David T. Grisamore, Esq.
53 W. Jackson Suite 1643
Chicago IL 60604
(312) 913-3448
(312) 913-3458
ARDC# 6237226