## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| K-5 REALTY, LLC, a Florida limited liability company, | ) ) ) |
| Plaintiff, | ) )  Case No.: 08 C 1400 ) |
| v. | )  Honorable Judge Charles Norgle ) |
| CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an Illinois corporation, and CHARLES CHRISTIAN, individually, | )  Magistrate Judge Brown ) )  JURY DEMAND ) ) |
| Defendants. | ) ) |

## MOTION FOR MORE DEFINITE STATEMENT AND/OR TO STRIKE PORTIONS OF ANSWER AND AFFIRMATIVE DEFENSES, PURSUANT TO FRCP 8(b), 9(c), and 12

The Plaintiff, K-5 REALTY, LLC, by its attorney, Gregg Minkow of Hinshaw & Culbertson LLP, respectfully prays for an order requiring a more definite statement with respect to Defendants' denial that Plaintiff complied with all conditions on its part in connection with the parties' agreements, as well as an order striking Defendants' purported Affirmative Defenses and their answers to certain paragraphs of the Plaintiff's Amended Complaint, and in support thereof, states as follows:

## I.      BACKGROUND

1.      This is an action for (i) breach of contract and fraud in connection with the failure by Defendant Contributed Mutual Benefits Mortgage Services, Inc. ("Contributed Mutual") to perform an agreement to provide financing for the Plaintiff's real estate development project, and (ii) the Defendants' subsequent misappropriation of a large sum (hereinafter "advance fee") given in exchange for the loan that never materialized.

2.      This Motion relates to deficiencies in the "Answer to Amended Complaint and Affirmative Defenses" filed by the Defendants [Docket Entry #29]. For ease of reference, a copy thereof is attached hereto as Exhibit 1.

## II.      DEFENDANTS' ANSWER TO PARAGRAPH 28 OF THE AMENDED COMPLAINT SHOULD BE MADE MORE DEFINITE OR STRICKEN

3.      In ¶28 of the Plaintiff's Amended Complaint, Plaintiff alleges, as it must in order to sustain a cause of action for breach of contract, that it satisfied all conditions on its part entitling it to performance by Contributed Mutual.

4.      Federal Rule of Civil Procedure 9(c) provides that allegations of full performance by the plaintiff in a breach of contract action may be made in summary fashion as was done here, but provides, further, that if the defendant denies such performance by the plaintiff, the defendant must state "specifically and with particularity" wherein the plaintiff's performance was allegedly deficient.

5.      In their Answer to ¶28 of the Amended Complaint, the Defendants deny that Plaintiff performed all conditions required on its part, but fail to specify any such conditions which the Plaintiff, in fact, is alleged to have not performed, or in what fashion its performance was deficient.

6.      The Defendants' Answer to ¶28 of the Amended Complaint is plainly deficient under FRCP 9(c).

7.      Federal Rule of Civil Procedure 12(e) provides that the court may order a more definite statement as to any claim or defense where appropriate.

8.      A more definite statement as to any basis for Defendants' claim that Plaintiff failed to perform on its own part is required in order to bring Defendants' Answer into compliance with FRCP 9(c).

2

9.     While FRCP 12(e) expressly applies to pleadings where a responsive pleading is permitted or required by the Rules, and no response from the Plaintiff is either permitted without leave or required with respect to a defendant's Answer, the principle of FRCP 12(e) is appropriately applied to Defendants' answer to ¶28 of the Amended Complaint.

10.    Alternatively, FRCP 12(f) provides that where no responsive pleading is permitted, the Court may strike any insufficient defense.

11.    Since Defendants' answer to ¶28 of the Amended Complaint comprises an insufficient defense under FRCP 9(c), striking that answer is an appropriate alternative to requiring a more definite statement from the Defendants.

### III.    DEFENDANTS' ANSWER TO PARAGRAPH 20 OF THE AMENDED COMPLAINT SHOULD BE STRICKEN

12.    In ¶18 of the Amended Complaint, Plaintiff alleges that it entered into a series of three written agreements with Contributed Mutual, in letter form, which are referenced in the Amended Complaint as Exhibits hereto.

13.    In their Answer, the Defendants admit that Contributed Mutual entered into the above-referenced agreements with the Plaintiff.

14.    The aforesaid agreements (Exhibit B, C, and D of the Amended Complaint), on their face, unambiguously provided that Contributed Mutual was to provide a loan to the Plaintiff on terms specified in the series of agreements.[1]

15.    One of the agreements (Exhibit D to the Amended Complaint) refers to Contributed Mutual as the "LENDER" right at the start of the document, while another of the agreements (Exhibit B) specifically states (on p. 1 thereof) that "we" (i.e., Contributed Mutual as

3

author of that letter agreement) "are pleased to commit ($10,000,000) as a Takeout Construction Phase Loan." Thus, the agreements make it clear that Contributed Mutual (and Defendant CHARLES CHRISTIAN ("Christian"), its owner and President signing the letter agreements on its behalf), made it clear that Contributed Mutual, and no one else, was the intended lender.

16.     Indeed, p. 2 of Exhibit B, which sets out "Conditions to Commitment," says nothing about conditioning the loan on participation by any third party as the actual lender.

17.     Notwithstanding the Defendants' admission that Contributed Mutual entered into the referenced agreements, and notwithstanding the clear language of the agreements which provide that Contributed Mutual would be the Lender under those agreements, the Defendants, in their answer to ¶20 of the Amended Complaint, deny that Contributed Mutual agreed to make the referenced loan, but rather, that "Contributed's role was that of a broker on these transactions."

18.     Defendants' answer to ¶20 attempts to turn on its head the unambiguous terms of agreements which the Defendants have admitted were entered into by Contributed Mutual under the direction of Christian.

19.     Defendants' answer to ¶20 represents an attempt to alter the fundamental terms of an unambiguous written contract, by attempting to inject materially different terms, impermissibly an without even citing any source for the alleged alteration.

20.     The alteration which Defendants seek is impermissible. See, e.g., *Harris Trust and Savings Bank v. Stephans,* 97 Ill.App.3d 683 (1st Dist. 1981) ("[W]hatever prior negotiations, understandings and verbal agreements may have been considered before the execution of the guaranty, they must be deemed to have been merged into the written contract and are thereby

---

[1] Two of the Agreements were detached from the Amended Complaint pending a determination as to whether they should be filed under seal. Courtesy copies of all three agreements will be provided to the Court upon presentation of this Motion.

extinguished."); *Appleton Papers, Inc. v. North American Group, Ltd.,* 1989 WL 36230 (N.D. Ill.) (copy attached), at *1 ("Any prior or contemporaneous oral agreements that are inconsistent with the written agreements or incorporated into the written agreements are merged into the written agreement.").

21.    In substance, Defendants' answer to ¶20 of the Amended Complaint comprises an affirmative defense which is barred as a matter of law and should therefore be stricken pursuant to FRCP 12(f).

## IV.    DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE STRICKEN

22.    Ironically, Defendants' own fourth Affirmative Defense (Exhibit 1, p. 15) purports to avoid liability on grounds that it is the Plaintiff, not the Defendants, who must rely on parol evidence in order to make their case "to the extent plaintiff's claim rests on oral representation or agreement made prior to the execution of the written contract and not contained therein."

23.    Whether or not the fourth Affirmative Defense is a complete statement of the law when applied to a proper set of allegations, the Plaintiff in this case is not relying upon any oral representations or agreements preceding the written contract.  Rather, the Amended Complaint asserts rights to a refund that appear explicitly in a series of interrelated written agreements (see ¶¶18-22, 30, and 33 of the Amended Complaint, set forth above Defendants' answers to those paragraphs in Exhibit 1, hereto), whose authenticity is *admitted* by the Defendants.

24.    FRCP 12(f) provides for striking from a pleading matter which is immaterial or insufficient as a defense, and Defendants' fourth Affirmative Defense certainly qualifies.

25.    The same is true of Defendants' first Affirmative Defense, which asserts the Statute of Frauds to bar "any claim against defendants for services based on an *oral* agreement for services that is not to be performed within one (1) year from the date of its making."  Exhibit

6314710v1 886125

1, p. 14 (emphasis added). What Plaintiff alleges here is a *written* agreement that was supposed to be performed within a matter of 2-3 months after its making (see ¶¶18 and 21(a) of the Amended Complaint); it is hard to discern any respect in which Defendants' first Affirmative Defense is material, and it, like the fourth Affirmative Defense, should be stricken.

26.    Defendants' second Affirmative Defense ("Failure to State a Claim"), meanwhile, asserts in a single, conclusory statement that "Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)." The failure to recite any fact, law, or defect renders this so-called Affirmative Defense obviously insufficient, and it, too, should be stricken under FRCP 12(f).

27.    Defendants' third Affirmative Defense, that "Plaintiffs have named an improper part [sic] insofar as Charles Christian personally is made a defendant to this case" (Exhibit 1, p. 15) appears premised on Defendants' misapprehension that a corporate officer or agent cannot be personally liable for tortious conduct or breach of fiduciary duty. That proposition is simply not true. *Dunmire v. Schneider*, 481 F.3d 465, 467 (7th Cir. 2007) (contrasting the law of torts, where an agent is liable for his torts, with the law of contracts, where, subject to exceptions, the agent ordinarily is not liable but the principal is). See, also, *Thornwood v. Jenner & Block,* 344 Ill. App. 3d 15, 27-29 (1st Dist. 2003) (holding that under Illinois common law – applicable here, since the Court is sitting in diversity – an agent can personally be liable for aiding and abetting his principal's torts and breach of fiduciary duty, as Christian is alleged to have done at Exhibit 1, p. 10, ¶39).[2] Here, Plaintiff's Amended Complaint does not assert personal liability against Christian for Contributed's breach of contract (Count I), but does assert personal liability against

---

[2] <u>PLEASE NOTE</u>: Defendants' Answer inadvertently shows two paragraphs numbered "39;" the second such paragraph on p. 10 of Exhibit 1 is actually ¶40 of the Amended Complaint and

Christian for conversion of Plaintiff's advance fee payment (Count II) and breach of his duties individually as a trustee (Count III).  Similarly, the Florida Civil Theft Statute sued upon in Count IV provides for liability of "persons," without making any distinction protecting corporate officers from personal liability for their conduct.  See Florida Statutes Annotated §812.014; Florida Statutes Annotated §772.11(1).  There is no lawful application of Defendants' third Affirmative Defense of "Improper Party," and it, also, should be stricken.

### V.    DEFENDANTS' ANSWER TO PARAGRAPH 31, 32, and 39 OF THE AMENDED COMPLAINT SHOULD BE MADE MORE DEFINITE OR STRICKEN, OR HELD TO COMPRISE ADMISSIONS

28.    FRCP 8(b) states, in relevant part:

"(2) *Denials--Responding to the Substance.* A denial must fairly respond to the substance of the allegation.

(3) *General and Specific Denials.* A party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds--may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

(4) *Denying Part of an Allegation.* A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

(5) *Lacking Knowledge or Information.* A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

(6) *Effect of Failing to Deny.* An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided."

29.    Paragraphs 31 and 32 of the Amended Complaint assert that Plaintiff and its

lawyer made written demands upon the Defendants for the return of Plaintiff's advance fee when

an answer thereto.  Subsequent numbering throughout the Answer is off by one paragraph number.)

6314710v1 886125

the loan for which it was given failed to close as required.  Paragraph 39 alleges communications with Christian concerning the return of the advance fee, and circumstances indicating that explanations given by Christian were disingenuous.  The answers given by the Defendants to ¶¶31, 32, and 39 sidestep the foregoing allegations, and comprise either improper pleading in violation of FRCP 8(b), or non-denials within the meaning of FRCP 8(b)(6).

30.    Accordingly, the Court may order either a more definite statement under FRCP 12(e), strike the answers under FRCP 12(f), or hold that the answers comprise admissions of all averments which they fail to specifically deny.

WHEREFORE, the Plaintiff, K-5 REALTY, LLC, prays for the following:

A.    An order requiring a more definite statement by the Defendants as to any conditions precedent to their own performance which they allege were not satisfied, or, in the alternative, striking their answer to ¶28 of the Amended Complaint:

B.    An order striking Defendants' answer to ¶20 of the Amended Complaint;

C.    An order striking Defendants' Affirmative Defenses;

D.    An order requiring a more definite statement from Defendants in answer to ¶¶31, 32, and 39 of the Amended Complaint, or, in the alternative, striking the answers already given or holding that the material allegations of the referenced paragraphs have been admitted by the Defendants; and

E.    Such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

8

Gregg I. Minkow
Laurie S. Randolph
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ARDC No. 6181058
E-mail: gminkow@hinshawlaw.com

Respectfully submitted,

K-5 REALTY, LLC, Plaintiff

By: s/ Gregg I. Minkow
       One of its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2008, I will have electronically filed Plaintiff's **MOTION FOR MORE DEFINITE STATEMENT AND/OR TO STRIKE PORTIONS OF ANSWER AND AFFIRMATIVE DEFENSES, PURSUANT TO FRCP 8(b), 9(c), and 12** with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system. Notification of such filings(s) was sent via electronic mail on May 5, 2008 to the following:

David Thaddeus Grisamore
Law Offices of David T. Grisamore
53 W. Jackson Blvd.
Suite 1643
Chicago, IL 60604
dgriz67@sbcglobal.net


By: s/ Gregg I. Minkow
One of its Attorneys

Gregg I. Minkow
Laurie S. Randolph
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ARDC No. 6181058
E-mail: gminkow@hinshawlaw.com

6314710v1 886125

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| K-5 REALTY, LLC,<br>a Florida limited liability company, )<br><br>Plaintiff, )<br>v. )<br>CONTRIBUTED MUTUAL BENEFITS )<br>MORTGAGE SERVICES, INC., )<br>an Illinois corporation, and )<br>CHARLES CHRISTIAN, individually, )<br><br>Defendants. ) | Case No. 08 C 1400<br><br>Honorable Judge Charles Norgle<br><br>Magistrate Judge Brown |

**ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendants, CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., an

Illinois corporation ("Contributed"), and CHARLES CHRISTIAN, individually ("Christian") state

as follows as their answer to Plaintiff's Amended Complaint:

**PARTIES, JURISDICTION & VENUE**

1.  K-5 is a limited liability company organized under the laws of the State of Florida,

engaged in the business of developing and building real estate. Its principal place of business is, and

has been since prior to the events set forth in this Amended Complaint, 1435 East Venice Avenue,

Venice, Florida, 34292.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations in the foregoing paragraph.

2.  K-5 has no offices or property located in the State of Illinois, and has never had any

offices or property in Illinois.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the

1

**Exhibit 1**

truth of the allegations in the foregoing paragraph.

3. The sole members and sole owners of K-5 Realty since March 7, 2005 have been Kevin Ward ("Ward") and George Ward. Ward resides at 165 Sugar Mill Drive, Osprey, Florida, 34229, and has resided there continuously since prior to the events set forth in this Amended Complaint. George Ward resides at 440 Palmetto Court, Venice, Florida, 34285, and has resided there continuously since prior to the events set forth in this Amended Complaint. Ward and George Ward are both domiciled in the State of Florida with the intent to reside there indefinitely.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

4. Contributed is a corporation organized in 2004 under the laws of the State of Illinois, whose registered agent, Illinois Corporation Service, is listed with the Secretary of State of Illinois as having its office in Springfield, Illinois. Contributed's principal place of business is, and has been continuously since prior to the events set forth in this Amended Complaint, 8655 E. Via Del Ventura, Suite G-200, Scottsdale, Arizona, 85258.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

5. Christian is, and has been continuously since prior to the events set forth in this Amended Complaint, the President of Contributed, residing in Scottsdale, Arizona. Christian resided at 25942 N. 104th Place, Scottsdale, Arizona, at the time this lawsuit was filed. Christian is domiciled in the State of Arizona with the intent to reside there indefinitely.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

6. Contributed is, and has been continuously since prior to the events set forth in this Amended Complaint, a citizen of the State of Illinois and the State of Arizona under 28 U.S.C. §

1332 (c)(1).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

7. Christian is, and has been continuously since prior to the events set forth in this Amended Complaint, a citizen of the State of Arizona.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

8. K-5, Ward, and George Ward are, and have been continuously since prior to the events set forth in this Amended Complaint, citizens of the State of Florida.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

9. Subject matter jurisdiction in this Court is proper on the basis of diversity of the parties pursuant to 28 U.S.C. §1332(a)(1).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

10. This action arises out of a breach of contract by Contributed to make a construction loan to K-5, and misappropriation of a sizeable up-front loan fee ($600,000.00) by Christian and Contributed after Contributed failed to close on the loan, and then failed to refund the fee as demanded by K-5.

ANSWER: Defendants denies the allegations set forth in the foregoing paragraph.

11. The written agreements sued upon provide that any dispute or claim regarding the rights of any party, or the interpretation of the agreements, shall be decided under Illinois law and brought in the "appropriate court in and for Cook County, Illinois."

ANSWER: Defendants state that the written agreement speaks for itself and therefore neither admit nor deny the allegations set forth in the foregoing paragraph.

3

12.   The aforesaid agreement was drafted and signed by Christian, as President of Contributed.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph. Further answering, Defendants state that Plaintiffs attorneys reviewed the agreement and demanded and received substantial changes to the contract.

13. This Court has personal jurisdiction over Contributed pursuant to the "Illinois Long-Arm Statute," at 735 ILCS 5/2-209(b)(3), and considerations of due process under the Fourteenth Amendment to the United States Constitution, by reason of Contributed being a corporation organized under the laws of the State of Illinois.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

14.   This Court has personal jurisdiction over Christian pursuant to the "Illinois Long-Arm Statute," at 735 IICS 5/2-209(a)(12), and considerations of due process under the Fourteenth Amendment to the United States Constitution, by reason of Christian's performance of duties as a director or officer of a Contributed, a corporation organized under the laws of the State of Illinois.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

15.   Venue in this Court is proper pursuant to 28 U.S.C. §1391 (a)(3).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

16.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) with respect to Counts II thru IV seeking civil remedies under Illinois state common law for conversion and breach of fiduciary duty, and for theft or exploitation pursuant to Florida Statutes Annotated §772.11.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

**COUNT I — BREACH OF CONTRACT (CONTRIBUTED)**

4

17. K-5 incorporates herein by this reference Paragraphs 1 through 16, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-16 above as though fully stated herein.

18.    In June, 2007, K-5 (through its Managing Member, Kevin Ward) and Contributed (through Christian as its President) signed and entered into a series of three (3) written agreements, namely:

a. Commitment Letter (attached hereto as Exhibit A)

b. Commitment Fee and Costs letter (attached hereto as Exhibit B); and

c. Summary of Terms and Conditions (attached hereto as Exhibit C).

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

19. Exhibits A, B, and C are referred to collectively hereinafter as the "Loan Agreement."

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

20.    Pursuant to the Loan Agreement, Contributed agreed to loan K-5 the sum of $ 10 million, in two phases ($6 million and $4 million), for the construction of an 18-unit condominium building in Florida to be known as Kymberly's Court.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph. Contributed's role was that of a broker on these transactions.

21.    While specific terms of the loan arrangement appear in the Loan Agreement itself, those terms included, among others, the following:

a. Closing on the first phase of the loan, including disbursement of a portion of the $6 million in principal (and availability of the rest as needed by K-5 thereafter), was to occur on August 31,

2007.

b. K-5 was to pay, in advance of the closing, a Commitment Fee, Costs And Closing Fee in

the sum of $600,000.00 (referred to repeatedly in the Loan Agreement as "CFC&CF"); and

c.    The CFC&CF was to be refunded if the loan did not close, regardless of the reason,

provided the $600,000.00 amount of the CFC&CF was originally paid by K-5 in a lump sum.

ANSWER: Defendants state that the documents speak for them selves and therefore neither

admit nor deny the allegations set forth in the foregoing paragraph.  Furthermore the allegations in

the preceding paragraph constitute legal conclusions which defendants are not required to either

admit or deny.

22.  K-5 paid the $600,000.00 sum of the CFC&CF in a lump suns by cashier's check

dated June 21, 2007, made payable to Contributed, which Contributed duly cashed and deposited

in its bank account on or about June 25, 2007.

ANSWER: Defendants admit the allegations set forth in the foregoing paragraph.

23.  K-5 performed all conditions required on its part under the Loan Agreement.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

24.  Numerous times, without fault on the part of K-5. Christian, on behalf of

Contributed, postponed the closing date of the first phase of the loan.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

25.  Finally, Contributed set a final closing date of December 5, 2007 for the first phase of

the loan, with the actual disbursement of funds to take place on said December 5, 2007.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

26.  K-5, through Kevin Ward, appeared at a "dry closing" on December 3, 2007, at the

6

offices of Properties Title in Sarasota, Florida, to deliver any remaining documents needed or requested for the December 5th closing and disbursement.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

27. On December 3, 2007, and at all times before that date and thereafter, K-5 and Ward were ready, willing and able to perform under the Loan Agreement.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the foregoing paragraph.

28. Ward, on behalf of K-5, executed all documents required by Contributed in connection with the intended closing, and performed all other tasks requested by Contributed in order for the closing and loan disbursements to proceed.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

29. By contrast, and in spite of K-5's performance, Contributed did not countersign any of the closing agreements, did not disburse or make available any funds on December 5th or at any other time, and, in fact, did not perform any of the duties required on its part in order to close the loan.

ANSWER: Defendants admit that Contributed never disbursed any loan proceeds and never countersigned the loan documents and denies the remaining allegations set forth in the foregoing paragraph.

30. Contributed breached the Loan Agreement by failing to close, and to disburse and make available the loan proceeds, as required by that agreement.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

31. On December 10, 2007, following the failed closing, Ward sent correspondence to Christian, as the representative of Contributed, revoking the documents signed at the "dry closing" on December 3, 2007, terminating the loan transaction due to breach by Contributed, and demanding the return of the $600,000.00 CFC&CF within forty-five (45) days (i.e., by January 30, 2008). A copy of that correspondence is attached hereto as Exhibit D.

ANSWER: Defendants state that the document attached speaks for itself and therefore neither admit nor deny the allegations set forth in the foregoing paragraph. Furthermore the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

32. On January 23, 2008, attorney Robert Moore, on behalf of K-5, sent to Christian a second demand for refund as a "reminder." A copy of that further demand is attached hereto as Exhibit E.

ANSWER: Defendants state that the document attached speaks for itself and therefore neither admit nor deny the allegations set forth in the foregoing paragraph. Furthermore the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

33. Having already breached the Loan Agreement by failing to close and disburse in a timely fashion, Contributed further breached the Loan Agreement by failing to refund the $600,000.00 CFC&CF when the loan did not close as it was supposed to.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

34. As a direct and proximate result of the aforesaid breach of contract by Contributed, K-5 has been damaged in the sum of at least $600,000.00 representing the CFC&CF which has not been

8

returned to it; lost profits due to delays in the funding and start-up of the condominium construction; interest on other loans, which the Loan Agreement was intended to pay off, as a result of delay and failure by Contributed to close the loan as scheduled; attorneys' fee incurred in having to pursue compliance with the Loan Agreement; and other damages.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT II — CONVERSION (CONTRIBUTED AND CHRISTIAN)

35. K-5 incorporates herein by this reference Paragraphs 1 through 34 of Count I, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-34 above as though fully stated herein.

36. The $600,000.00 CFC&CF payment by K-5 comprises identifiable property designated to be refundable in the event that, for any reason, the Loan Agreement did not close.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

37. At all times following K-5's demand for refund, K-5 had an absolute and unconditional right to immediate possession of the CFC&CF funds.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

38. Contributed and Christian, jointly and severally, wrongfully and without authorization assumed control, dominion, or ownership over the CFC&CF funds, and have refused to turn them over in response to the demands made by K-5.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

9

39. In point of fact, it appears that Christian has converted the funds to his own use. When asked why the funds were not being immediately returned, Christian told Ward that Christian had used the $600,000.00 in CFC&CF funds to buy key man Life insurance for $10 million on Ward, a $5-7 million performance bond on a contractor, and a $10 million bond to facilitate assignment of K-5's "obligations." Christian said he needed time to recover the money from these applications in order to refund them to K-5. However, prior to the closing of the loan, neither Christian nor Contributed would have an insurable interest in Ward's life, or any legal right to the issuance of a performance bond. Moreover, on information and belief Christian and Contributed satisfied on January 16, 2008 a judgment obtained against them in the State of Texas in 2004. In light of the implausibility of Christian's explanation for how he had deployed the CFC&CF under his control, and the coincidence in time of the Defendants' satisfaction of the judgment against them from 2004, it appears that Christian and Contributed have used the CFC&CF funds other than for their intended purpose, in violation of their fiduciary duty, and are now covering up.

ANSWER: Defendants deny the allegations related to conversion, object to the hearsay attributed to Christian, object to the legal conclusions offered as factual allegations and deny the remaining allegations in the foregoing paragraph.

39. As a direct and proximate result of the Defendants' foregoing conduct, K-5 has suffered damages in an amount equal to the $600,000.00 tortiously and wrongfully withheld from it by the Defendants.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

40. The Defendants acted intentionally, with malice, and with a reckless disregard for the

10

harm that they were causing to K-5 by misusing, the CFC&CF funds as they apparently have done.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

## COUNT III — BREACH OF FIDUCIARY DUTY (CHRISTIAN AND CONTRIBUTED)

41. K-5 incorporates herein by this reference Paragraphs 1 through 41 of Count II, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-41 above as though fully stated herein.

42. It is the custom and practice in the industry for a lender to hold funds like the CFC&CF in escrow for the benefit of both the lender and borrower, until it is determined whether the loan has closed in accordance with the loan contract.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

43. The Loan Agreement in this case created an express trust under which, prior to closing of the loan and distribution of loan proceeds, Christian and Contributed held the $600,000.00 CFC&CF in trust for the benefit of K-5.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

44. At all times, as a result of that trust, Christian and Contributed had a fiduciary duty to preserve the availability of the $600,000.00 CFC&CF for refund to K-5 in the event the loan did not close.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

45. Christian and Contributed breached their fiduciary duty to K-5 by disposing of the

$600,000.00 CFC&CF in a manner which did not benefit K-5 and by refusing, or not having it available, for a refund to K-5.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

46.  As a direct and proximate result of the Defendants' foregoing conduct, K-5 has suffered damages in an amount equal to the $600,000.00 which was either dissipated or and wrongfully withheld from it by the Defendants.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

47.  The Defendants acted intentionally, with malice, and with a reckless disregard for the harm that they were causing to K-5 by misusing the CFC&CF funds as they apparently have done.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

### COUNT IV— CIVIL THEFT (CHRISTIAN AND CONTRIBUTED)

48.  K-5 incorporates herein by this reference Paragraphs I through 48 of Count IV, above, as though set forth here verbatim.

ANSWER: Defendants restate and reallege their answers to Paragraphs 1-48 above as though fully stated herein.

49.  Pursuant to Florida Statutes Annotated §772.11, any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of a violation of Florida Statutes Annotated §8 12.014 (among other provisions) has a cause of action for three-fold the actual damages sustained, along with reasonable attorneys' fees and court costs.

ANSWER: Defendants state that the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

50. §812.014, in turn, states that a person commits theft if he knowingly uses the property of another with intent to either temporarily or permanently deprive the other person of a right to the property or a benefit Isom the property, or appropriate the property to his or her own use or to the use of any persons not entitled to the use of the property.

ANSWER: Defendants state that the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

51. At all relevant times, Christian and Contributed knew that when they failed to close and disburse under the Loan Agreement in a timely fashion, K-5 was entitled to a return of the CFC&CF funds in the sum of $600,000.00.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

52. Despite the aforesaid knowledge, Christian knowingly obtained the CFC&CF funds from Contributed, or Christian or Contributed used those funds, with the intent to temporarily or permanently deprive K-5 of its right to those funds or to the benefit from those funds.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

53. Based, among other things, upon what appears to be the misinformation conveyed by Christian about how the money was used, such deprivation appears to have been with intent to temporarily or permanently appropriate the property to Christian's own use, or to the use of Contributed, where it was clear to Christian and Contributed that they were not entitled to use of the funds.

ANSWER: Defendants deny the allegations set forth in the foregoing paragraph.

13

54. 772.11 requires pre-suit demand for the treble damages amount, and allows the recipient of that demand to a release by making the treble damages payment within thirty (30) days after receiving the demand. K-5 has sent the demand notice concurrently with the filing of this action (Exhibit F hereto), and stands ready, willing, and able to voluntarily dismiss this count of the Complaint in the event (however unlikely) that the Defendants voluntarily pay three times the $600,000.00 sum that they have wrongfully withheld.

ANSWER: Defendants state that the allegations in the preceding paragraph constitute legal conclusions which defendants are not required to either admit or deny.

WHEREFORE, Defendants pray for judgment in their favor plus such other and further relief as the Court deems appropriate in accordance with applicable rules of law and equity.

A-E; and for such other and further relief as this court deems just.

## AFFIRMATIVE DEFENSES

Defendants state as follows as their affirmative defenses to the complaint.        Further, Defendant reserves the right to present additional affirmative defenses as they become known:

### Statute of Frauds.

Defendants interpose the statue of frauds to any claim against defendants for services based on an oral agreement for services that is not to be performed within one (1) year from the date of its making.

### Failure to state a claim

Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

14

<u>Improper Party</u>

Plaintiffs have named an improper part insofar as Charles Christian personally is made a defendant to this case.

<u>Parol Evidence</u>

To the extent that plaintiff's claim rests on oral representation or agreements made prior to the execution of the written contract and not contained therein, plaintiff's claim is barred by the parol evidence rule.

WHEREFORE, defendants requests an order dismissing the case and awarding them their costs.

CONTRIBUTED MUTUAL BENEFITS MORTGAGE SERVICES, INC., and CHARLES CHRISTIAN

_/S/_____

BY:    David T. Grisamore, Esq.

David T. Grisamore, Esq.
53 W. Jackson Suite 1643
Chicago IL 60604
(312) 913-3448
(312) 913-3458
ARDC# 6237226

15

Westlaw.

Not Reported in F.Supp.                                                                                       Page 1
Not Reported in F.Supp., 1989 WL 36230 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1989 WL 36230)

**H**
Appleton Papers, Inc. v. North American Group, Ltd.
N.D.Ill.,1989.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
APPLETON PAPERS, INC., a corporation, et al.,
Plaintiffs, Counterdefendants,
v.
NORTH AMERICAN GROUP, LTD., a corpora-
tion, Defendant, Counterplaintiff.
No. 88 C 9271.

April 7, 1989.

*MEMORANDUM OPINION AND ORDER*

WILLIAM T. HART, District Judge.
*1 Plaintiffs have moved to dismiss defendant's de-
fenses and counterclaims. For the purposes of this
motion, the allegations of the answer and counter-
complaint are assumed to be true. Defendant be-
came the sole shareholder of Pioneer Business
Forms, Inc. and Woehrmyer Business Forms, Inc.
and also agreed to guarantee Pioneer's and
Woehrmyer's debts to plaintiffs. Plaintiffs agreed to
accept payment of 50% of the debt immediately
with the other 50% to be repaid based on a percent-
age of Pioneer's and Woehrmyer's income. Defend-
ant alleges the parties' written contracts contain an
implicit agreement that plaintiffs would extend fur-
ther credit and not force the liquidation of Pioneer
and Woehrmyer. Defendant alleges this implicit
agreement was violated, fraud was committed, the
guaranty lacks consideration, and antitrust viola-
tions were committed. These allegations are raised
both as defenses and as counterclaims. Since there
is no alleged standing problem as regards raising
the allegations as defenses, each claim must be con-
sidered on its merits as a defense regardless of
whether there is standing for it to be raised as a
counterclaim. The court therefore proceeds to con-

sider each claim on its merits.

Defendant virtually concedes it has not alleged an
antitrust violation. It is sufficient to state that an an-
titrust violation has not been alleged. The antitrust
defense and counterclaim are struck and dismissed.

The May 4, 1987 letter agreement between
plaintiffs, Pioneer, and Woehrmyer sets up a sched-
ule for paying 50% of the old debt. That agreement
says nothing about providing further new credit.
The guaranties also lack promises to provide further
credit. Defendant, however, alleges that promises to
provide further additional credit were made and that
such promises were part of the inducement for de-
fendant agreeing to purchase Pioneer and
Woehrmyer and guarantee their debt. Defendant ar-
gues these promises can be considered because the
guaranties are ambiguous as regards the considera-
tion given and, in any event, the promises of further
credit are not inconsistent with the written con-
tracts. Appleton Papers, Inc.'s guaranty refers to the
"giving of credit ... and other good and sufficient
considerations." Boise Cascade Corporation's guar-
anties refer to its promise to "forbear a present right
of action or sell and deliver goods and merchandise"
and "other good and valuable consideration." Geor-
gia Pacific Corporation's guaranty states defendant
agrees to the guaranty "for the purpose of either in-
ducing extension of credit ... or of inducing tempor-
ary forbearance from collection of accounts due at
the date hereof." James River Corporation's guar-
anties state, "In consideration of any financial ac-
commodations given, or to be given, or continu-
ed,...." Weyerhaeuser Company's guaranty states,
"For value received, and the further consideration
of any credit that Weyerhaeuser Company ... may
extend...."

There are no promises in either the letter agreement
or guaranties to provide additional credit to Pioneer
and Woehrmyer. Therefore, the allegations as to
such promises must be considered to be alleging
separate oral agreements. It is true, as defendant ar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 36230 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1989 WL 36230)

Page 2

gues, that such agreements, if they exist, are not inconsistent with the written contracts. Plaintiffs argue, though, that any oral agreements were merged into the written contracts and cannot be considered. *See Harris Trust & Savings Bank v. Stephans,* 97 Ill.App.3d 683, 422 N.E.2d 1136, 1142 (1981). While *Harris* supports plaintiffs' argument, the statement of the rule contained in *Harris* is incomplete. Any prior or contemporaneous oral agreements that are inconsistent with the written agreements or incorporated into the written agreements are merged into the written agreement. Restatement (Second) of Contracts § 213(1) (1979). *Cf. Champaign National Bank v. Landers Seed Co.,* 165 Ill.App.3d 1090, 519 N.E.2d 957, 960,*leave to appeal denied,*122 Ill.2d 571, 530 N.E.2d 240 (1988), *cert. denied,*109 S.Ct. 1138 (1989). The alleged oral promises of further credit are not inconsistent with the written guaranties and cannot, based on the facts alleged in the complaint and the language of the guaranties, be considered incorporated into the guaranties in a modified form or otherwise. Also, none of the guaranties contain language that they are fully integrated agreements. Based on the allegations of the complaint, it must be assumed that oral agreements to provide further credit existed and were breached.[FN1] Since defendant alleges oral promises that were breached, defendant's breach of contract defense is not stricken. Also, since the breach is based on alleged contracts with defendant, not simply on defendant's status as a shareholder of Pioneer and Woehrmyer, defendant has standing to bring the contract claim as a counterclaim. *See Buschmann v. Professional Men's Association,* 405 F.2d 659 (7th Cir.1969).

*2 Plaintiffs argue defendant's allegations of fraud are inadequate because "explicit promises to perform a future act without an accompanying intent to perform [generally] do not constitute actionable misrepresentation." *Hindley v. Seltel, Inc.,* 672 F.Supp. 1093, 1096 (N.D.Ill.1987). Plaintiffs concede, however, that this rule does not apply where the "misrepresentations are 'alleged to be part of a scheme to accomplish the fraud,' "*id.*(quoting *Serig*

*v. South Cook County Service Corp.,* 581 F.Supp. 575, 579 (N.D.Ill.1984)), and it is alleged that express, not implied, promises of future performance were made. *Hindley,* 672 F.Supp. at 1096. Plaintiffs do not contest that the misrepresentations are alleged to be part of a scheme to accomplish the fraud, but argue no express promises are alleged. As previously discussed, defendant has alleged express oral promises. Plaintiffs argument, therefore, must fail. Furthermore, since the promises are alleged to have been made to defendant to induce it to purchase Pioneer and Woehrmyer and provide funds to pay 50% of their then-current debts, defendant has standing to bring the fraud allegations as a counterclaim.

The allegations of conspiracy shall continue to the extent they allege conspiracy to commit fraud. Although the Fourth Defense is characterized in defendant's pleadings as alleging failure of consideration, the factual allegations contained therein simply state a breach of contract terms. The facts alleged, not the legal conclusions stated, are controlling. The Fourth Defense is not stricken. At this point, it is unnecessary to separate from the contract allegations the allegations as to good faith. That issue, therefore, is not separately considered.

IT IS THEREFORE ORDERED that plaintiff-counterdefendants' motion to dismiss and to strike is granted in part and denied in part. Defendant-counterplaintiff's antitrust defenses are stricken. Defendant-counterplaintiff's antitrust counterclaims are dismissed. A status hearing is set for May 15, 1989 at 9:15 a.m.

FN1. Since not argued by plaintiffs, it is not considered whether plaintiffs have insufficiently alleged the terms of the oral agreements. *Compare Champaign National,* 519 N.E.2d at 959-60; *McClellan v. Banc Midwest, McLean County,* 164 Ill.App.3d 304, 517 N.E.2d 762, 764-65 (1987), *leave to appeal denied,*121 Ill.2d 572, 526 N.E.2d 832 (1989). Plaintiffs make passing reference to the statute of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 36230 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1989 WL 36230)**

frauds. Since not argued, that issue also will not be considered.

N.D.Ill.,1989.

Appleton Papers, Inc. v. North American Group, Ltd.

Not Reported in F.Supp., 1989 WL 36230 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.